FIELDER *v.* DAVISON.

1. An automobile is not classified with dangerous instrumentalities, such as dynamite, gunpowder, ferocious animals, and the like, so as to make the owner liable for injury occurring from the running of the automobile, on the same basis that an owner of such an instrumentality would be liable for an injury occasioned by it.

2. If an owner of an automobile is sued for damages on account of an injury caused by the negligent operation of it by his chauffeur, the rules of law touching master and servant will ordinarily be applied for the determination of the liability of the former for the act of the latter.

3. If a chauffeur negligently injures a person by the operation of his master's automobile, the master will be held liable for the tort of his servant, if done by his command or in the prosecution of his business.

4. If a chauffeur, while not engaged in the prosecution of his master's business, and without the knowledge or consent of the master, and against his instructions, takes the automobile of the latter for the purpose of taking a ride for his own pleasure, and while so engaged negligently injures a person on the street, the master will not be liable.

5. If while a servant is not engaged in the performance of his master's business, and during a time when he is free to engage in his own pursuits, his master lends him an automobile, and while he is using it

for his own pleasure, disconnected from any business of the master, he negligently injures another by its operation, the servant will stand in the same position as would another borrower, and the master will not be liable for his acts, on the doctrine of respondeat superior.

6. Under the Civil Code, § 5926, where there is no conflict in the evidence, and that introduced with all reasonable deductions or inferences therefrom demands a particular verdict, the court may direct the jury to find for the party entitled thereto. But where there is conflicting evidence as to material issues, it is error for the court to direct a verdict.

FEBRUARY 12, 1913. REHEARING DENIED FEBRUARY 27, 1913.

Action for damages. Before Judge Ellis. Fulton superior court. October 20, 1911:

*Reuben R. Arnold,* for plaintiff. *Slaton & Phillips, Payne & Jones,* and *Leonard Haas,* for defendant.

LUMPKIN, J. J. W. Fielder brought suit against Beaumont Davison to recover damages on account of a personal injury inflicted by the automobile of the latter. The defense set up by the evidence was that the chauffeur of the defendant took the automobile of the latter from the garage on his lot at night, without the authority, permission, or knowledge of the defendant, and against his orders, and was using the machine for a pleasure ride for himself when the injury occurred. At the close of the evidence the court directed a verdict for the defendant, and the plaintiff excepted.

1. The courts hold, with practical if not absolute uniformity, that an automobile is not to be classified with what are called "dangerous instrumentalities," such as ferocious animals, dynamite, gunpowder, and other inherently dangerous contrivances or agencies; and that, while more nearly approximating a locomotive, the ordinary automobile differs materially therefrom. As to those things a duty rests upon the owner to keep them properly within his control; and when he does not do so, he has sometimes been held liable for injury resulting from the improper use of such instrumentalities by a servant, though not at the time in the performance of his duty. But the automobile, while a modern invention, is in its usual form a vehicle for use in the transportation of persons or property upon the roads and highways. It furnishes one of the legitimate methods of traveling along the streets and roads. In Macomber *v.* Nichols, 34 Mich. 217 (22 Am. R. 522), Judge Cooley said: "When the highway is not restricted in its dedication to some particular mode of use, it is open to all suitable

methods; and it can not be assumed that these will be the same from age to age, or that new means of making the way useful must be excluded merely because their introduction may tend to the inconvenience or even to the injury of those who continue to use the road after the same manner as formerly." See also Acts 1910, pp. 90, 94, sec. 11.

2. Owing to the nature and construction of the machines and the employment of steam, gasoline, or electricity as a motive power, certain dangers naturally arise from their use and operation, and those who operate them must exercise that degree of care which is commensurate with the dangers naturally incident to such use. But, in the absence of any statutory provision to the contrary, liability for injuries arising from operating automobiles is based on negligence or wilful tort in the use or operation, and not on the theory of classifying such machines as inherently dangerous agencies. Huddy on Automobiles (3d ed.), § 30 and citations; *Lewis* v. *Amorous,* 3 *Ga. App.* 50 (59 S. E. 338); Danforth *v.* Fisher, 75 N. H. 111 (71 Atl. 535, 21 L. R. A. (N. S.) 95, 139 Am. St. R. 670); Jones *v.* Hoge, 47 Wash. 663 (92 Pac. 433, 14 L. R. A. (N. S.) 216, 125 Am. St. R. 915); and cases cited in the next division of this opinion. On the subject of directing a verdict the Supreme Court of Washington distinguished the case last cited from one with different facts, in Kneff *v.* Sanford, 63 Wash. 503 (115 Pac. 1040). As will be seen later in this opinion, there are additional facts in the present case, and it is not necessary to go as far as that court did in the Kneff case.

If the owner of an automobile is sued for damages on account of an injury caused by it while driven by his chauffeur, the rules of law touching master and servant and the liability of the former for the act of the latter are to be applied.

3. Omitting the fellow-servant doctrine, the general rule is that a master is liable for the tort of his servant, whether negligent or voluntary, if done by his command or in the prosecution and scope of his business. Civil Code, § 4413. The expressions, "in the scope of his business," or "in the scope of his employment," or similar words, have sometimes been given too narrow a meaning. A master rarely commands a servant to be negligent, or employs him with the expectation that he will commit a negligent or wilful tort; but if the act is done in the prosecution of the master's

business, that is, if the servant is at the time engaged in serving the master, the latter will be liable. *Savannah Electric Co.* v. *Wheeler,* 128 *Ga.* 550, 553, et seq. (58 S. E. 38; 10 L. R. A. 1176). But for a tort committed by the servant entirely disconnected from the service or business of the master, the latter is not responsible under the doctrine of respondeat superior, although it may occur during the general term of the servant's employment.

4, 5. It is very generally held, unless there is a statutory provision to the contrary, that if a chauffeur or other servant takes the automobile of his master, without the knowledge or consent of the latter and contrary to his directions, and, while riding in it for his own purposes and not in connection with the business of the master, negligently injures a passer, the master will not be liable. And this is also held where the owner loans his automobile to the chauffeur at a time when not engaged in his service, and for the private use of the chauffeur, disconnected from the master's business. *McIntire* v. *Hartfelder-Garbutt Co.,* 9 *Ga. App.* 327 (71 S. E. 492); Steffen v. McNaughton, 142 Wis. 49 (124 N. W. 1016, 26 L. R. A. (N. S.) 382, 19 Ann. Cas. 1227); Slater *v.* Advance Thresher Co., 97 Minn. 305 (107 N. W. 133, 5 L. R. A. (N. S.) 598); Babbitt on Law of Motor Vehicles, § 570; and cases cited above. The tenth section of the act of 1910 (Acts 1910, p. 93) preserves any right of action for damages, but does not declare a new right.

It is unnecessary to discuss special cases; such as, where a parent buys an automobile to be used and operated by his son, whether the son becomes the parent's agent for that purpose; or whether, if an owner knowingly allows a child, an imbecile, a drunken person, or a grossly incompetent and unskilled person to take charge of his machine, which is dangerous if unskillfully operated, and to drive it out upon a crowded thoroughfare, his liability for an injury resulting is to be measured solely by the doctrine of respondeat superior, or whether, in such a case, the owner would himself be guilty of negligence. These or similar possible questions are not here involved. We are dealing with the case before us and the general rules applicable thereto.

6. Taking the law to be as above stated, the next question which arises is whether, under the evidence, the judge had authority to direct a verdict, or whether he should have submitted the case

to the jury under proper instructions. In some jurisdictions the rule is stated to be that the court may direct a verdict when the evidence is of such conclusive character that the court, in the exercise of a sound judicial discretion, would feel compelled to set aside a verdict returned in opposition to it. In this State such is not the test. Our statute (Civil Code, § 5926) declares: "Where there is no conflict in the evidence, and that introduced with all reasonable deductions or inferences therefrom demands a particular verdict, the court may direct the jury to find for the party entitled thereto." It has been held that it is error to direct a verdict except upon the statutory conditions; and although the court may think the evidence greatly preponderates in favor of one side, this does not authorize him to take the case from the jury and direct a verdict. *Mixon* v. *Warren,* 94 *Ga.* 688 (21 S. E. 716); *Central of Georgia R. Co.* v. *Gortatowsky,* 123 *Ga.* 366 (51 S. E. 469). Conflicts as to mere immaterial points will not require a submission of the case to the jury.

In Stewart *v.* Baruch, 103 N. Y. App. Div. 577 (93 N. Y. Supp. 161), it was held, that, "In an action brought to recover damages for personal injuries sustained by the plaintiff in consequence of his being struck by an automobile while crossing a city street, the fact that the defendant was the owner of the automobile and that the chauffeur in charge thereof was in his employ, is sufficient to establish prima facie that the chauffeur was acting within the scope of his employment at the time." In Long *v.* Nute, 123 Mo. App. 204, 209-210 (100 S. W. 511), it was said: "Where a servant, who is employed for the special purpose of operating an automobile for the master, is found operating it in the usual manner such machines are operated, the presumption naturally arises that he is running the machine in the master's service. If he is not so running it, this fact is peculiarly within the knowledge of the master, and the burden is on him to overthrow this presumption by evidence which the law presumes he is in possession of. It would be a hard rule, in such circumstances, to require the party complaining of the tortious acts of the servant to show by positive proof that the servant was serving the master and not himself."

In Curley *v.* Electric Vehicle Co., 68 N. Y. App. Div. 18 (74 N. Y. Supp. 35), it was held that evidence that the driver of a cab which wrongfully collided with the plaintiff's horse had on his hat

33

a plate with the words "Electric Vehicle" and a number, and that the same words were upon a plate on the cab, coupled with proof that the drivers in the employment of the defendant, a corporation named the Electric Vehicle Company, wore similar inscriptions upon their hats, established prima facie that the driver of the electric cab was in the employment of the defendant. See also Lawson *v.* Wells, Fargo & Co., 113 N. Y. Supp. 647, 650.

In Vonderhorst Brewing Co. *v.* Amrhine, 98 Md. 406 (56 Atl. 833), it was held, that, in an action for damages for an injury caused by a collision of vehicles, proof that a vehicle bore the defendant's name was sufficient to sustain an allegation that it was driven by an agent of the defendant, in the absence of evidence to the contrary. Some authorities deny that this alone is sufficient. In Lotz *v.* Hanlon, 217 Pa. 339 (66 Atl. 525, 10 L. R. A. (N. S.) 202, 118 Am. St. R. 922, 10 Ann. Cas. 731), it was held that the evidence showed without conflict that the driver of the machine causing the injury was not acting in the scope of his employment, and a recovery was improper. Some general language was used as to the necessity to make it appear that the accident occurred while the person in charge of the automobile was using it in the course of his employment and on his master's business. In fact it appeared that the plaintiff relied, on this subject, solely on evidence that the machine which ran him down was registered in the name of the defendant. The reasoning of the opinion beyond this is not very cogent. That it was not intended to lay down an exact rule as to the burden of proof necessary to make out a prima facie case, or as to what would suffice to raise a question of fact for the jury, clearly appears from the later decision of the same court in Moon *v.* Matthews, 227 Pa. 488 (76 Atl. 219, 29 L. R. A. 856, 136 Am. St. R. 902). In that case it was held, that, in an action for injuries from being struck by an automobile. where it appeared that the car belonged to the defendant, who was not an occupant when the accident happened, and was operated by his regular chauffeur at the time, not upon any errand of the defendant or to serve his purpose, but in obedience to an order of a member of defendant's family, that the occupants of the car were friends of defendant and guests of his sister; and that the errand upon which the car was taken was proper and fitting in itself, the burden was upon the defendant to show that the chauffeur was not acting within the

scope of his employment when the accident occurred. It was further held that evidence that the defendant and his sister had forbidden the chauffeur to take out the car unless the defendant was with it would not show conclusively that the car was taken out by the chauffeur at the time of the accident while not acting in the scope of his employment, where it also appeared that on the morning after the accident the defendant and his sister called upon the plaintiff to discuss the accident and attempted to arrange a settlement, that defendant asked plaintiff to send him his doctor's bill and the bill for repairing his carriage, and neither then nor at any time before suit disclaimed liability on the ground that the chauffeur was not acting for defendant at the time of the accident. It was said: "Where a servant, who is employed for the special purpose of operating an automobile for the master, is found operating it in the manner such machines are usually operated, the presumption naturally arises that he is running the machine in the master's service. If he is not, this fact is peculiarly within the knowledge of the master, and the burden is on him to overthrow this presumption by evidence which the law presumes is in his possession. Since the scope of the servant's employment is necessarily dependent on circumstances, a hard and fast rule can not be laid down as to the scope of any particular employment; and it is ordinarily a question for the jury whether or not a particular act comes within the scope of a servant's employment." In the opinion the excerpt which has been hereinbefore copied from the decision in Long v. Nute, supra, was quoted approvingly. Emphasis was laid upon the fact that the defendant and his sister called on the plaintiff and tried to arrange a settlement; that the defendant asked the plaintiff to send him the latter's bill of expenses; and that he did not at any time before the bringing of the suit disclaim liability on the ground that the chauffeur was not acting for him at the time of the injury. It was held that this raised a question of fact for determination by the jury. The case of Lotz v. Hanlon, supra, was cited and distinguished.

In 16 Cyc. 941, it is said that mere conjectures, suggestions as to what might have happened if certain circumstances had not occurred, what was the understanding, and the like, are not competent as admissions. "But it is not essential that the statement should be absolutely precise. Nor is it necessary that it should be

a direct admission; it may be an indirect admission, as where it bears on the issue indirectly." On page 949 it is said: "A promise to do 'the fair thing,' or a suggestion of submitting the matter to arbitration, is a competent fact, failure to deny liability being the significant circumstance."

Bassett *v.* Shares, 63 Conn. 39 (27 Atl. 421), was a case of an injury to a horse, and evidence was admitted to show that defendant said he would "do what is right," would pay the veterinary surgeon's bill, and would let the other party have a horse till his own recovered. See also, Plummer *v.* Currier, 52 N. H. 287; *Molyneaux* v. *Collier*, 13 *Ga.* 406 (4), 415; *Howland* v. *Bartlett*, 86 *Ga.* 669 (12 S. E. 1068); *Hatcher* v. *Bowen,* 74 *Ga.* 840. Such statements being admissible, and for the consideration of the jury in addition to a prima facie case, in rebuttal of the evidence for the defendant, they raise a question for the jury. In *Lewis* v. *Amorous,* supra, the case was considered on demurrer to a petition, where the rule applies that allegations are to be taken most strongly against the pleader. It in no way involved the right of a jury to draw inferences, or the right to direct a verdict where there is conflict in the evidence.

In the light of these principles, how stands the case under consideration? The evidence was abundant to show that the plaintiff was run down and injured on a public street of the city of Atlanta by the automobile of the defendant, driven by his regularly employed chauffeur, and that the latter was guilty of negligence. The injury occurred on a street some twelve blocks distant from the house of the defendant. The substantial point of controversy was whether, at the time of the injury, the chauffeur was acting in the scope of his employment, so as to render the defendant liable. The defendant testified that he paid the chauffeur by the week; that he went to New York some days prior to the injury, instructing the chauffeur not to take the car out at any time without the consent or direction of defendant's wife; and that he returned home on the day after the injury. He admitted having several conversations with the injured man, and with the wife, the brother, and the business partner of the latter, and that he did not tell any of them that the chauffeur was using the car without his consent. He said: "I told him [the plaintiff] it was my car and my driver. I don't know why I didn't tell him that my driver had the car out without

my consent." He denied that he told the plaintiff's brother or his wife that he was going to pay the injured person for his items of loss, and would see that he was satisfied or compensated; or that he told the plaintiff that it was his (defendant's) car and driver, and that he assumed responsibility. He stated that he did not discharge the chauffeur, "because I didn't know what was going to become of this trouble." He said that he did not keep the man for evidential purposes, but that the latter was a good driver and a fine mechanic, and the defendant retained him in his employment and allowed him to carry the key of the barn or garage, and thus to have access to the automobile. The wife of the defendant testified that if the services of the chauffeur were needed at night, he was notified at supper time; and if not, he was free to engage in his own pursuits until morning; that on the evening of the injury he was not so notified; that she gave no consent for him to use the automobile, but he took it without her knowledge or consent; that the first she knew of the occurrence was through a communication by telephone informing her of the injury. The chauffeur corroborated the testimony of the defendant and his wife, and stated that he took the machine without the knowledge or consent of the owner or his wife, in order to take a pleasure ride with a friend. The only point of difference material to be noticed between the testimony of the chauffeur and that of the defendant's wife was, that she said nothing as to reprimanding him after the accident occurred, while he stated that she did so. There are other minor differences, which need not be mentioned. The chauffeur stated that he was living in Montgomery, Alabama, at the time of the trial, but came to Atlanta at defendant's request and expense as a witness. In explanation of the fact that the defendant did not mention that the chauffeur took the machine without his consent, one of his attorneys testified that he advised the defendant not to disclose his defense; that this was done as soon as he was employed; and that he was employed immediately after the accident. "I should say in two or three days afterward."

The wife of the plaintiff testified that the defendant came to her house some time after the accident and had a conversation with her, of which the following was a part: "He assured me that as soon as Mr. Fielder was well enough physically that he would see that he had every justice for the accident. He told me he was

grieved to death to think that his car had been the cause of it, and he assured me that he could have every satisfaction, in 'my house. I told him it was worrying Mr. Fielder so much, he was so disabled, and he said 'get him well,' and he would see that he had every satisfaction. As to whether anything was said about expenses or anything of that sort, I was just fixing to take him to Indian Springs, and he [defendant] told me to go ahead, to take him anywhere to get him well, and he said to go away and get him well first, and then we would talk this matter over and he would satisfy me. He told Mr. Fielder in my presence to keep an account of the expenses, of what he spent, that is, what it took to take him away. He never denied his liability for this accident in my presence. No, sir, he never said anything in the conversation about the chauffeur having stolen his car, and his not being responsible for it on that night." The brother of the plaintiff corroborated the testimony of the latter's wife, and stated that the defendant said his wife was greatly distressed about the matter and had come with him to the sanitarium where the injured man was. He stated that he had two conversations with the defendant, and that in neither of them did the latter deny liability. Comparing the dates given by the witnesses, the first conversation as to which the plaintiff's brother testified apparently took place before the employment of counsel by the defendant. The plaintiff testified that the defendant called on him, after he had been carried home from the sanitarium, and a conversation took place in which the following occurred: The defendant said: "I want you to understand I will satisfy you as to anything with reference to this accident." I said, "Mr. Davison, I have been to a lot of expense in a hospital, and I don't know where it will end." Mrs. Fielder said: "The doctor thinks it is best for us to go to Indian Springs;" and he [the defendant] said: "By all means go right on, and keep a record of these things, and you will be compensated."

In the light of the authorities above cited, and in view of the evidence, the case should have been submitted to the jury, under proper instructions. The plaintiff made out a prima facie case. The defendant sought to rebut it by showing that the chauffeur was acting beyond the scope of his employment when the injury occurred. The plaintiff introduced additional evidence, which raised a question of fact, and as to which there was conflict between

the evidence on behalf of the plaintiff and that of the defendant. It is not a question as to what the presiding judge or this court may think in regard to the issue of fact. The judge had no authority to take the case from the jury and direct a verdict for the defendant.

If there are two inferences, either of which may be drawn from these conversations, one consistent with liability and the other with non-liability, the judge can not, as matter of law, direct which the jury shall draw.

*Judgment reversed. Beck, J., absent. The other Justices concur, except*

ATKINSON, J. I dissent from the result reached in the last division of the opinion. Applying the law to the evidence, I think there was no error in directing a verdict for the defendant.