126

Decided June 17, 1938.  Rehearing denied June 29, 1938.

*Joseph B. McGinty, James T. Sisk*, for plaintiff.
*Earle Norman, Thomas B. Walton Jr.*, for defendants.

Sutton, J.  Buford Jump brought suit for damages against B. L. Anderson, trading as Anderson Motor Lines, and Lloyds America, his insurance carrier, the petition alleging substantially the following: that a transport truck owned by Anderson, trading as aforesaid, struck and injured the plaintiff while the truck was being operated at about twenty-five miles an hour by the defendant's servant, Sam Borders, on Railroad Street in the City of Elberton, Georgia, the truck being loaded with about four tons of granite, Borders being a regular driver for the defendant, and at the time of the injury to the plaintiff being in and about the business of the defendant, the hauling of freight for hire in interstate commerce, the driver and truck being at the time and place of the injury under the management and control of the defendant, and Borders being the agent or employee of said defendant carrier; that the said street was at least thirty-five feet wide at the point where the accident took place; that the servant was not meeting or passing any traffic at the time and had the entire street to himself; that the plaintiff was standing by a truck on which he was a helper; that just as defendant's truck was about to pass plaintiff and the parked truck, Borders, the servant and driver for Anderson, playfully and negligently turned the front wheels of his truck towards plaintiff and proceeded forward and toward him, came within about two feet of him, then turned the front wheels of his truck toward the left, missing plaintiff with the front end of the truck, but, failing to turn the front end of the truck far enough to the left and misjudging his distance and speed, caused the front end of the long body of the truck to strike and knock plaintiff down, inflicting certain described injuries; that the driver was negligent in turning the front wheels of the truck towards the plaintiff at said time and place, when there was no need for it,

just to play; in not turning out from the plaintiff far enough to cause the body of the truck to miss plaintiff, and in driving the truck at said time and place at the speed of twenty-five miles an hour. When the case came on for trial and the plaintiff had introduced evidence and rested, counsel for the defendants made a motion, in the nature of a general demurrer, to dismiss the action. The court sustained the motion, and the exception is to that judgment.

The allegations of the petition set out facts which, if sustained by proof, would have authorized the jury to return a verdict in favor of the plaintiff; and consequently the court erred in sustaining the motion to dismiss. Code, § 105-108, provides: "Every person shall be liable for torts committed by his wife, his child, or his servant, by his command or in the prosecution and within the scope of his business, whether the same shall be by negligence or voluntary." It is contended by counsel for the defendants that the petition did not allege that at the time of the injury the servant was acting within the scope of his employment, and that it shows that he was engaged in serving his own personal, exclusive ends. The petition alleged that the servant was the defendant's regular driver, and at the time and place was in and about the master's business, the hauling of freight for hire in interstate commerce, which we think is a sufficient allegation as to acting within the scope of employment. In *Fielder* v. *Davison,* 139 *Ga.* 509, 511 (77 S. E. 618), it was said: "The expressions, 'in the scope of his business,' or 'in the scope of his employment,' or similar words, have sometimes been given too narrow a meaning. A master rarely commands a servant to be negligent, or employs him with the expectation that he will commit a negligent or wilful tort; but if the act is done in the prosecution of the master's business, that is, if the servant is at the time engaged in serving the master, the latter will be liable." In *Savannah Electric Co.* v. *Wheeler,* 128 *Ga.* 550, 554 (58 S. E. 38, 10 L. R. A. (N. S.) 1176), it was said: "Expressions used in some reports and text-books, that a master is bound by the act of his agent or servant in the scope of his agency and in furtherance of the master's business, or when the servant is acting for the benefit of the master, do not mean that the agent's act must be beneficial to the master, or the latter is not bound. If any declare such a rule as that the master is bound by

torts of the servant which benefit him, but not by any others, we can not accept it as the rule in this State." It is also well settled that "if a servant steps aside from his master's business, for however short a time, to do an act entirely disconnected from it, and injury results to another from such independent voluntary act, the servant may be liable, but the master is not liable." *Savannah Electric Co.* v. *Hodges,* 6 *Ga. App.* 470 (65 S. E. 322); *Greeson* v. *Bailey,* 167 *Ga.* 638 (146 S. E. 490); *Henderson* v. *Nolting First Mortgage Cor.,* 184 *Ga.* 724, 733 (193 S. E. 347, 114 A. L. R. 1022). Did the servant so deviate from his employment that for his act the master could not be held liable? "The test is not that the act of the servant was done during the existence of the employment,—that is to say, during the time covered by the employment,—but whether it was done in the prosecution of the master's business; whether the servant was at that time engaged in serving his master." *L. & N. Railroad Co.* v. *Hudson,* 10 *Ga. App.* 169, 172 (73 S. E. 30). The question whether or not the servant at the time of an injury to another was acting in the prosecution of his master's business and in the scope of his employment is for determination by the jury, except in plain and indisputable cases.

Evidently the judge entertained the opinion that the petition showed that the servant was serving his own personal ends, in an act entirely disconnected from his employment; but with that conclusion we can not agree. It is true that the allegations show that he turned the truck in the direction of the plaintiff in a playful manner, but it also appears that he did so while driving the truck in and about the master's business, to wit, hauling freight for hire in interstate commerce. Conceivably, if without any purpose to serve the master, he had left the truck, and had approached the plaintiff in some playful manner for the purpose of startling him, and in such act had injured him, the master would not be liable; but here it is made to appear that in the very act of attempting to startle the plaintiff the servant was driving the truck on business for the master, was proceeding along the same street and in the same general direction, driving the truck and transporting granite for the master. In *Savannah Electric Co.* v. *Hodges,* supra, referring to Galveston Railroad Co. *v.* Currie, 100 Tex. 136 (96 S. W. 1074, 10 L. R. A. (N. S.) 367),

where a servant, having the care, custody, and control of things in the defendant railroad's roundhouse, playfully turned an air-hose on a subordinate in such a way that he injured him by the discharge of air from the hose, it was said in quoting from the Currie case: "It may be further conceded that if, in directing the hose at a fire to put it out, he had also struck with it one of the other servants, either to make him get out of the way, or for some other purpose, the motive thus partly influencing his act towards such other would not deprive it of its legal character, as done in the master's business. It is in cases of the character supposed, where there has been a mingling of personal motive or purpose of the servant with the doing of his work for his employer, that much of the difficulty and conflict of opinion have arisen in determining whether or not the wrong committed should be ascribed to the master, or be regarded as the personal tort of the servant alone. It is now settled, in this State at least, that the presence of such a motive or purpose in the servant's mind does not affect the master's liability, where that which the servant does is in the line of his duty and in the prosecution of the master's work." It was at least a jury question as to whether or not there was a deviation, and, if so, whether the deviation was so slight as not to affect the master's responsibility for the servant's act. Furthermore, it was a jury question as to whether or not the master was liable under the principle of law announced in *Limerick* v. *Roberts,* 32 *Ga. App.* 755 (124 S. E. 806), that if a servant or employee, while engaged in the business of his master, makes a slight deviation for ends of his own, the master remains liable when the act was so closely connected with the master's affairs that, though the servant may derive some benefit from it, it may nevertheless fairly be regarded as within the course of his employment. The act of deviating, if such the act in the present instance may be described, although to gratify the caprice of the servant to startle the plaintiff, might properly be found by the jury to have been so closely connected with the driving of the truck by the servant on business for the master that it might fairly be regarded as within the course of the servant's employment. From what is said above we think that the petition set out a cause of action against the defendant, and that the court erred in dismissing the action.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*