A01A1884. PALLADINO et al. v. PIEDMONT HOSPITAL, INC.
A01A1885. PATTERSON v. PALLADINO et al.
(561 SE2d 235)

PHIPPS, Judge.

Albert Palladino and his wife sued Piedmont Hospital (Piedmont) and its employee, Arthur Patterson, and asserted claims for assault, battery and loss of consortium arising out of Patterson's allegedly improper touching of Palladino's genitals while Palladino was a patient at Piedmont. The Palladinos also asserted claims against Piedmont for negligent hiring and negligent supervision. Piedmont moved for summary judgment on the grounds that (1) it could not be liable under a respondeat superior theory because Patterson's actions were outside the scope of his duties and not in furtherance of the hospital's business interest, and (2) it could not be held liable for negligent hiring or negligent retention because it had no knowledge of any propensity for sexual misconduct by Patterson. The trial court granted Piedmont's motion on the respondeat superior theory of liability, finding that "it is well settled under Georgia law that an employer is not responsible for the sexual misconduct of an employee." The trial court also granted summary judgment on the negligent hiring and negligent retention claims, finding that Palladino had shown no evidence that would suggest Piedmont knew or should have known of Patterson's alleged criminal propensities.

In Case No. A01A1884, the Palladinos appeal only the trial court's ruling on Piedmont's liability under a respondeat superior theory. We find that, based on the particular facts of this case, summary judgment in favor of Piedmont was inappropriate. Therefore, we reverse that ruling.

Patterson also moved for summary judgment, claiming that Palladino had failed to prove that he was the perpetrator. The trial court denied the motion, ruling that a jury could infer from the evidence that Patterson was the perpetrator. Patterson appeals in Case No. A01A1885. We find that Patterson's motion was properly denied and affirm.

On August 13 and 14, 1998, Palladino was a patient at Piedmont. As a result of undergoing an angioplasty, a sheath was inserted in the femoral artery in his groin. Patterson was responsible for providing treatment following the angioplasty and was authorized to enter Palladino's room alone. Treatment included checking the groin area for any bleeding or complications, cleaning the area and, if necessary, moving his testicles to perform these tasks.

In his deposition, Palladino testified that after the angioplasty he was taken back to his hospital room. He claimed that at some

point on the evening of August 13,[1] Patterson entered his room alone and began rubbing his leg. When he asked Patterson what he was doing, he responded that he was "washing [Palladino's] leg." Palladino then passed out, but later woke to see Patterson rubbing his penis with both hands, attempting to cause him to have an erection, and Patterson's lips almost touching his penis. At that point, Palladino lost consciousness. The next day, Palladino's penis was sore. Palladino testified that he was paralyzed both verbally and physically at the time of the incident and believes that the temporary paralysis was caused by an unknown drug, introduced intravenously. Palladino admitted that he did not know Patterson's name at the time of the incident and that he based his determination that the perpetrator was Patterson on police records in which Patterson admitted to washing his leg.[2]

Palladino told his wife about the incident the day after he was released, and they contacted Piedmont the following day. In interviews with hospital personnel and police, Palladino described the perpetrator as a tall black male with a large build and black hair who spoke with an accent, perhaps Jamaican or African, and who came into his hospital room wearing green scrubs on the evening of August 13 or early morning of August 14. In his deposition, Palladino testified that he recalled seeing only one male nurse in his room during his hospitalization.

Patterson admitted in his deposition that he provided patient care to Palladino on the evening of August 13. He testified that his first contact with Palladino was at approximately 8:00 p.m. when he checked the sheath in his groin, noticed a trickle of blood and cleaned the groin area. He then replaced the gauze in the crease of Palladino's groin. Patterson testified that he had to adjust Palladino's testicles to perform these tasks and that he may have been wearing green scrubs that night. Patterson testified that he returned to Palladino's room once more that evening. He denied manipulating Palladino's genitals to arouse him sexually and denied having his mouth on or near Palladino's penis.

Hospital records verify that Patterson was in Palladino's room more than once on the evening of August 13 and that he checked the dressing on Palladino's sheath and noted that there was no bleeding. Records from Patterson's personnel file indicate that Patterson is a black male, six feet tall, with black hair, and that he weighed between 190 and 220 pounds in 1998. Only three male staff members

---

[1] Palladino testified that he could not be more precise about the timing of the incident because there was no clock on the wall.

[2] In his statement to a police investigator, Patterson admitted to washing Palladino's groin.

were identified as fitting, to some degree, the description provided by Palladino. Of the three men, only Patterson had worked on August 13. Patterson was also the only male staff member who admitted to being in Palladino's room that evening.

*Case No. A01A1884*

1. Every person shall be liable for the torts committed by his servant by his command or in the prosecution and within the scope of his business, whether committed by negligence or voluntarily.[3] That liability extends to intentional torts,[4] where the question is directed not to

> the authority to commit the tort, but to authority to accomplish a purpose in pursuance of which a wilful tort is committed. [Cit.] The test is whether the tort was done within the scope of the actual transaction of the [employer's] business for accomplishing the ends of his employment. If [an employee] steps aside from his [employer's] business to do an act entirely disconnected from it and injury to another results, the [employer] is not liable. [Cit.] Where the tort is entirely personal to the employee, it is not within the scope of his employment and the employer is not liable. [Cit.][5]

Except in plain and indisputable cases, whether an employee is acting within the scope of his employment is a question for the jury.[6] Here, the actions attributed to Patterson were not so far removed from his accepted duties to preclude liability for his employer.[7] Patterson was performing his job when he initially touched Palladino's genitals. Whether any continued, inappropriate touching was "entirely disconnected" from Piedmont's business is a question for the jury.[8] It does not matter whether Piedmont did not intend or expect Patterson to perform the complained-of acts.[9] Nor does the fact that Patterson's actions may have been mingled with personal motives or purposes automatically entitle Piedmont to summary judgment.[10] A

---

[3] OCGA § 51-2-2.

[4] *Frazier v. Southern R. Co.*, 200 Ga. 590, 594 (2) (37 SE2d 774) (1946).

[5] *Reynolds v. L & L Mgmt.*, 228 Ga. App. 611, 612-613 (1) (492 SE2d 347) (1997).

[6] *Bacon v. News-Press & Gazette Co.*, 188 Ga. App. 703, 704 (373 SE2d 797) (1988).

[7] See id.

[8] *Reynolds*, supra; *Bacon*, supra; see *Odom v. Hubeny, Inc.*, 179 Ga. App. 250, 251 (1) (345 SE2d 886) (1986) (" 'The theory that one may be an employee one minute and the very next minute become enraged, commit an assault and battery, and in that act not be an employee, is too fine-spun a distinction.' [Cit.]").

[9] See *Reynolds*, supra.

[10] Id.; *Bacon*, supra.

jury must determine if Patterson deviated from his accepted duties so slightly that it would not affect Piedmont's liability for his actions.[11]

We are not persuaded by the cases relied upon by the trial court —*Alpharetta First United Methodist Church v. Stewart*,[12] *Doe v. Village of St. Joseph*[13] and *Coley v. Evans Mem. Hosp.*[14] In *Stewart*, a minister engaged in a sexual relationship with one of his parishioners who later sued the church for assault and battery. In *Doe*, parents sued their daughter's school for emotional trauma resulting from the child's consensual sexual relationship with an adult staff member who worked as a recreational advisor. *Coley* involved a suit against a hospital based on an alleged sexual assault on a patient by an emergency room physician. In all three cases, the plaintiffs proceeded against the employer under the theory of respondeat superior and the court held that the acts were purely personal in nature, unrelated to the employee's duties and not in furtherance of the employer's business. *Stewart* and *Doe* are clearly distinguishable because contact with another person's sex organs was not remotely within the scope of either employee's duties. Unfortunately, the *Coley* opinion does not reveal sufficient facts for us to determine if it presented a similar factual situation. We cannot assume that the facts here are sufficiently similar to the facts in *Coley* to warrant summary judgment under its precedent.

Piedmont relies on *Lucas v. Hosp. Auth. of Dougherty County*,[15] where a nurse gave lethal, unauthorized injections of potassium chloride to a patient, ultimately causing his death. The court affirmed summary judgment for the hospital, finding that the nurse pursued only her own personal interests when she gave the lethal, unauthorized injections.[16]

We find *Lucas* distinguishable. The nurse's actions in *Lucas* were completely outside the scope of her employment as she had no authority to give the patient *any* injection of potassium chloride. Thus, she was not performing an authorized function of her job when she administered the injections to Lucas. Here, Patterson was authorized to and even required to touch Palladino's genitals to perform his job. While performing the authorized task, he allegedly went further and sexually assaulted Palladino.[17]

---

[11] Id.

[12] 221 Ga. App. 748, 752 (2) (472 SE2d 532) (1996).

[13] 202 Ga. App. 614, 616 (1) (415 SE2d 56) (1992).

[14] 192 Ga. App. 423 (385 SE2d 100) (1989).

[15] 193 Ga. App. 595 (1) (388 SE2d 871) (1989).

[16] Id. at 596.

[17] See *Reynolds*, supra (distinguishing *Lucas* because it did not involve the uninterrupted escalation of an employee's performance of one of the duties for which he was employed).

This is not a case where the facts are plain and indisputable that the employee was acting outside the scope of his employment. As a result, we must reverse summary judgment in favor of Piedmont.

### Case No. A01A1885

We review the denial of a motion for summary judgment de novo and view the evidence with all reasonable inferences and conclusions in favor of the party opposing the motion.[18] To prevail on a motion for summary judgment, the movant must show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.[19] A defendant meets this burden by "showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . All of the other disputes of fact are rendered immaterial."[20] If the defendant discharges this burden, the plaintiff cannot rest on his pleadings, but must point to specific evidence giving rise to a triable issue.[21]

2. Patterson claims that he is entitled to summary judgment because there is no proof that he committed the acts alleged by Palladino. He argues that he has discharged his summary judgment burden by denying the Palladinos' allegations of assault and battery in his deposition testimony and that the Palladinos have failed to point to any evidence to the contrary.

Viewed most favorably to the Palladinos,[22] the evidence shows that Patterson entered Palladino's room on the night of August 13; that he touched Palladino's genitals, allegedly to remove blood near his groin, despite notations in the hospital records that no blood was present; that someone fitting Patterson's physical description improperly touched Palladino's genitals and that no other hospital employee fitting that description was working that night. Despite Patterson's denial, a jury could conclude that he performed the acts alleged by Palladino.[23] The trial court properly denied Patterson's motion for summary judgment.

3. Patterson also appears to claim that summary judgment is appropriate because Palladino never revoked his consent to any med-

---

[18] *McBride v. Brown*, 246 Ga. App. 149 (538 SE2d 863) (2000).

[19] OCGA § 9-11-56 (c).

[20] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[21] Id.; OCGA § 9-11-56 (e).

[22] *Lau's Corp.*, supra.

[23] See *Thompson v. Crownover*, 259 Ga. 126, 130 (6) (381 SE2d 283) (1989) ("[i]t is the jury's function to draw an inference from the evidence when more than one inference can be drawn").

ical treatment during his stay at Piedmont. Patterson relies on *Williams v. Lemon*,[24] where the court granted a doctor's motion for directed verdict on a patient's claim that he touched her improperly during a routine gynecological exam. The court in *Williams* recognized that unauthorized touching constitutes actionable battery, but found that the patient had authorized the doctor to touch her for purposes of a gynecological examination and had presented no evidence that the touching exceeded accepted medical techniques.[25] Here, Palladino's testimony that Patterson was attempting to cause him to have an erection and preparing to perform oral sex on him constituted evidence that the touching exceeded accepted medical techniques. Palladino's failure to object to or prevent the touching does not authorize summary judgment in Patterson's favor under the standard set forth in *Williams*.

*Judgment reversed in Case No. A01A1884. Judgment affirmed in Case No. A01A1885. Smith, P. J., and Barnes, J., concur.*

DECIDED MARCH 4, 2002 — 

*Barry L. Zimmerman*, for Palladino et al.

*Hall, Booth, Smith & Slover, Deborah S. Moses, Downey & Cleveland, William C. Anderson*, for Piedmont Hospital, Inc. and Patterson.

[24] 194 Ga. App. 249 (390 SE2d 89) (1990).
[25] Id. at 251 (2).