S02G1036. PIEDMONT HOSPITAL, INC. v. PALLADINO et al.
(580 SE2d 215)

SEARS, Presiding Justice.

In this suit alleging an employer's liability under the theory of respondeat superior, the Court of Appeals reversed the trial court's grant of summary judgment to the employer hospital, finding that even though the suit alleged the employee had deviated from his job

responsibilities when causing harm, there was a jury question as to whether the deviation was so slight as to not affect the employer's potential liability.[1] Having reviewed the record, we conclude that the employee's actions were for purely personal reasons and did nothing to further the employer's business. Accordingly, as explained below, the employer cannot be liable under a theory of respondeat superior as a matter of law. Therefore, we reverse.

Appellee Albert Palladino underwent angioplasty surgery at appellant Piedmont Hospital, Inc. ("Piedmont"). As part of Palladino's surgery, a sheath was inserted in the femoral artery of his groin. Patterson, an employee of Piedmont, was responsible for providing post-surgical treatment to Palladino and was authorized to enter Palladino's hospital room alone, check the groin area for any bleeding or complications, clean the area, and, if necessary, move Palladino's testicles in order to perform these tasks.

Palladino alleged that following his surgery, he awoke to discover Patterson rubbing his (Palladino's) penis with both hands. Palladino also alleged that Patterson's mouth was positioned near his penis. In addition to filing suit against Patterson, Palladino and his wife filed suit against Piedmont under a theory of respondeat superior for assault, battery and loss of consortium. The trial court granted summary judgment in favor of Piedmont on the ground that "it is well settled under Georgia law that an employer is not responsible for the sexual misconduct of an employee."[2] The Court of Appeals reversed and we granted certiorari.

"Every person shall be liable for torts committed by his . . . servant by his command . . . and *within the scope of his business,* whether the same are committed by negligence or voluntarily."[3] "Two elements must be present to render a master liable [under respondeat superior]: first, the servant must be in furtherance of the master's business; and, second, he must be acting within the scope of his master's business."[4] If a tort is committed by an employee "not by reason of the employment, but because of matters disconnected therewith," the employer is not liable.[5] If a tortious act is committed not in furtherance of the employer's business, "but rather for *purely*

---

[1] *Palladino v. Piedmont Hosp.*, 254 Ga. App. 102 (561 SE2d 235) (2002).

[2] The Palladinos also sued Piedmont for alleged negligent hiring and negligent supervision of its employee Patterson, and the trial court's ruling did not address those particular claims.

[3] OCGA § 51-2-2 (emphasis supplied).

[4] Adams, Georgia Law of Torts, p. 263, § 7-2 (2002 ed.); *Farmer v. Rider Truck Lines*, 245 Ga. 734, 737 n. 2 (266 SE2d 922) (1980); *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776, 777 (257 SE2d 186) (1979).

[5] *Reynolds v. L & L Mgmt.*, 228 Ga. App. 611, 612-613 (492 SE2d 347) (1997); *Lucas v. Hosp. Auth. of Dougherty County*, 193 Ga. App. 595 (388 SE2d 871) (1989). See *McCranie v. Langdale Ford Co.*, 176 Ga. App. 281, 282 (335 SE2d 667) (1985).

*personal reasons* disconnected from the authorized business of the master, the master [is] not . . . liable."[6]

Under Georgia law, "if a servant steps aside from his master's business to do an act entirely disconnected from it, and injury to another results from the act, the servant may be liable, but the master is not liable."[7] In accordance with the foregoing principles, Georgia courts have consistently held that an employer cannot be held liable under respondeat superior for an employee's sexual misconduct when the alleged acts were not taken in furtherance of the employer's business and were outside the scope of employment.[8]

There can be no disputed issue of fact that if, as alleged, Patterson improperly manipulated Palladino's genitals and performed (or attempted to perform) oral sex on Palladino, those acts (1) were committed for purely personal reasons associated solely with Patterson's own gratification, and (2) were entirely disconnected from the scope of Patterson's employment with Piedmont Hospital. As explained, Patterson was authorized to inspect the place in Palladino's groin where the sheath was inserted, to clean the area, and to move Palladino's testicles if necessary to perform these tasks. If, however, Patterson deviated from these job duties and began rubbing Palladino's penis and/or performing oral sex on him, he was no longer acting within the scope of his employment or furthering the business of Piedmont Hospital. At that point, Patterson was acting not as a hospital employee, but rather purely for his own personal reasons.[9] It follows from the applicable Georgia law discussed above that Piedmont Hospital cannot be held vicariously liable under the theory of respondeat superior for Patterson's alleged misconduct and the trial court properly awarded summary judgment in the Hospital's favor.

In cases very similar to this one, our precedent is clear that hos-

---

[6] *Lucas,* 193 Ga. App. at 596 (emphasis supplied). Accord *Reynolds,* 228 Ga. App. at 612-613; *Frazier v. Southern R. Co.,* 200 Ga. 590, 593 (37 SE2d 774) (1946); *Odom v. Hubeny, Inc.,* 179 Ga. App. 250, 251 (345 SE2d 886) (1986).

[7] *Brownlee v. Winn-Dixie Atlanta,* 240 Ga. App. 368, 369 (523 SE2d 596) (1999).

[8] *Alpharetta First United Methodist Church v. Stewart,* 221 Ga. App. 748, 752 (472 SE2d 532) (1996) ("It is well settled under Georgia law that an employer is not responsible for the sexual misconduct of an employee"); *B.C.B. Co. v. Troutman,* 200 Ga. App. 671, 672 (409 SE2d 218) (1991) (An employer cannot be liable for an employee's sexual misconduct because such acts do not further the employer's business and are outside the scope of employment); *Favors v. Alco Mfg. Co.,* 186 Ga. App. 480, 482-483 (367 SE2d 328) (1988) (employee's sexual misconduct was outside the scope of employment, did not further the employer's business and provided no basis for respondeat superior liability); *Big Brother/Big Sister of Metro Atlanta v. Terrell,* 183 Ga. App. 496, 497 (359 SE2d 241) (1987) (sexual molestation not within the scope of employment and did not further employer's business; hence, no liability under respondeat superior).

[9] In this regard, the dissent's reasoning is fatally flawed when it posits that by sexually manipulating Palladino's genitals, Patterson was " 'engaged in doing the type of work for which he was hired.' " Dissenting op. at 618 (citation omitted).

pitals cannot be held liable for the tortious acts committed by their employees outside the scope of employment and not in furtherance of the hospital's business. For example, in *Lucas v. Hosp. Auth. of Dougherty County*,[10] the Court of Appeals upheld an award of summary judgment to a hospital that had been sued for vicarious liability based upon the actions of its employee, a nurse. The nurse was accused of injecting lethal doses of potassium chloride into patients. The Court of Appeals held that the nurse's actions did not further the interests of the hospital and stated that "while [the nurse] may have been advancing the hospital's interest in giving *authorized* injections of potassium chloride, she clearly abandoned the hospital's interest and pursued her own when she gave the lethal, unauthorized injections."[11] Likewise, in this case, so long as Patterson touched Palladino's groin in order to care for Palladino's surgical incision, he was acting within the scope of his employment and furthering Piedmont Hospital's interests. However, if Patterson began manipulating Palladino's genitals, then he abandoned the hospital's interests and began pursuing his own personal, morally offensive, agenda. Once Patterson crossed that line, his actions extended beyond the scope of his employment and were totally unconnected to the Hospital's business. Under *Lucas* and other cases, Piedmont Hospital cannot be held vicariously liable for these purely personal acts.[12]

Moreover, Georgia precedent holds that Piedmont Hospital cannot be held vicariously liable merely because Patterson's employment allowed him access into Palladino's room and provided him with an opportunity to commit tortious acts against Palladino. In *Mountain v. Southern Bell Tel. &c. Co.*,[13] a telephone company employee gained entry into a customer's home via his employment, and then assaulted and raped her. The customer filed suit against the telephone company, alleging respondeat superior because the employee tortfeasor had gained entry into the plaintiff's home while performing duties that were within the scope of his employment. The customer argued that had it not been for the tortfeasor's employment with the telephone company, he would not have gained entry into her home and never would have had the opportunity to assault her. The Court of Appeals rejected that argument and upheld the trial court's grant of summary judgment in the company's favor. The appellate court held that simply because a tortious act occurs during the time of employment is not dispositive on the issue of whether an employee was act-

---

[10] 193 Ga. App. 595 (388 SE2d 871) (1989).
[11] 193 Ga. App. at 596.
[12] See *Stewart*, 221 Ga. App. at 752; *Troutman*, 200 Ga. App. at 672; *Favors*, 186 Ga. App. at 482-483; *Terrell*, 183 Ga. App. at 497.
[13] 205 Ga. App. 119, 120 (421 SE2d 284) (1992).

ing within the scope of his employment when the tort was committed.[14] Although the telephone company employee may have been acting within the scope of his employment when he entered the customer's home, once he began to assault and rape her, his actions took him outside the realm of employment and became purely personal in nature. Once the employee tortfeasor crossed that threshold, respondeat superior liability could no longer attach to his employer.

In the present case, the Court of Appeals reasoned that Patterson's alleged conduct was "not so far removed from his accepted duties to preclude liability for his employer."[15] This conclusion is both illogical and at odds with cases such as *Lucas* and *Mountain,* supra. While Patterson's employment did authorize him to inspect and clean the incision in Palladino's groin, in no way did it permit him to sexually manipulate Palladino's genitals. The only nexus between these two actions is that they occurred in the same region of the body. Such a physiological connection is an insufficient basis to expose an employer to vicarious liability for its employee's tortious conduct, especially when the misconduct is obviously and irrefutably outside the scope of his employment.[16]

Moreover, as discussed above, two elements are required before an employer can be held liable under respondeat superior for the actions of an employee — not only must the employee be acting within the scope of employment, but the actions must also be in furtherance of the employer's business.[17] As explained above, there can be no serious argument that Patterson's alleged manipulation of Palladino's genitals furthered Piedmont Hospital's business. Hence, as a matter of law, Piedmont Hospital cannot be subject to vicarious liability under respondeat superior for Patterson's alleged misconduct.[18]

---

[14] *Mountain,* 205 Ga. App. at 120; *Southern Bell Tel. &c. Co. v. Sharara,* 167 Ga. App. 665, 667 (307 SE2d 129) (1983).

[15] 254 Ga. App. at 104.

[16] See, e.g., *Lucas,* 193 Ga. App. at 596 (insufficient nexus for respondeat superior liability to attach where a nurse who was authorized to give certain prescribed injections followed normal procedures but gave unprescribed, lethal injections).

[17] See note 4, supra, and accompanying text.

[18] The dissent's reliance upon cases such as *Jump v. Anderson,* 58 Ga. App. 126, 129 (197 SE 644) (1938); *Andrews v. Norvell,* 65 Ga. App. 241 (15 SE2d 808) (1941); and *Miller v. Honea,* 163 Ga. App. 421 (294 SE2d 629) (1982) is misplaced. The first of these three cases, *Jump,* involved an employee truck driver who, while driving a truck on the employer's business, injured someone. The second case, *Andrews,* involved a saloon employee charged with the duty of seating customers who, while seating customers, injured the plaintiff. The third case, *Miller,* concerned a union official whose duties included the handling of grievances and who, while discussing a grievance with a union member, became enraged and assaulted him. In contrast, the present case involves an employee with clearly defined job responsibilities who is accused of causing harm not while performing his job duties, but rather of abandoning altogether both those duties and the business of his employer in order to pursue a purely personal agenda that resulted in harm.

It follows that the trial court properly granted summary judgment in Piedmont's favor, and the Court of Appeals erred by reversing that judgment.

Judgment reversed. All the Justices concur, except Hunstein, Carley and Thompson, JJ., who dissent.

CARLEY, Justice, dissenting.

If, as a matter of law, Piedmont Hospital cannot be vicariously liable for Patterson's assault, then no employer can ever be liable for any sexual misconduct of an employee, no matter how closely connected such conduct may be with the employee's duties. Thus, the majority effectively establishes an absolute rule that the doctrine of respondeat superior does not apply to cases involving sexual assault. Today's ruling contradicts well-settled precedent which applies the doctrine to willful torts committed during momentary, slight deviations from the employment for personal reasons such as anger or malice. *Frazier v. Southern R. Co.*, 200 Ga. 590, 594 (2) (37 SE2d 774) (1946). In an excellent opinion below, without dissent, Judge Phipps explained the ruling of the Court of Appeals as follows:

> Here, the actions attributed to Patterson were not so far removed from his accepted duties to preclude liability for his employer. [Cit.] Patterson was performing his job when he initially touched Palladino's genitals. Whether any continued, inappropriate touching was "entirely disconnected" from Piedmont's business is a question for the jury. [Cits.] . . . A jury must determine if Patterson deviated from his accepted duties so slightly that it would not affect Piedmont's liability for his actions. [Cit.]

*Palladino v. Piedmont Hosp.*, 254 Ga. App. 102, 104-105 (1) (561 SE2d 235) (2002). Because this analysis is eminently correct, I dissent to the reversal of the judgment of the Court of Appeals.

Contrary to the majority's erroneous quotation of OCGA § 51-2-2, "[i]t is not essential to the liability of a master for the wilful and intentional tort of a servant that the servant shall have acted at the command of the master or with the master's consent. [Cit.]" *Brown v. Union Bus Co.*, 61 Ga. App. 496, 499 (6 SE2d 388) (1939). The common law principle of respondeat superior "is codified in OCGA § 51-2-2: 'Every person shall be liable for torts committed by his . . . servant by his command *or* in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily.' [Cit.]" (Emphasis supplied.) *Chorey, Taylor & Feil v. Clark*, 273 Ga. 143, 144 (539 SE2d 139) (2000).

The expressions, "in the scope of his business," or "in the

scope of his employment," or similar words, have sometimes been given too narrow a meaning. A master rarely commands a servant to be negligent, or employs him with the expectation that he will commit a negligent or wilful tort; but if the act is done in the prosecution of the master's business, that is, if the servant is at the time engaged in serving the master, the latter will be liable. [Cit.] But for a tort committed by the servant entirely disconnected from the service or business of the master, the latter is not responsible under the doctrine of respondeat superior, although it may occur during the general term of the servant's employment.

*Fielder v. Davison*, 139 Ga. 509, 511-512 (3) (77 SE 618) (1913). See also *IBM v. Bozardt*, 156 Ga. App. 794, 797 (275 SE2d 376) (1980); *Andrews v. Norvell*, 65 Ga. App. 241, 243-244 (15 SE2d 808) (1941). Even though " 'the employee may have violated his instructions or *exceeded in some respects the boundaries of his authorized acts*, the master is still bound where the disobedience is not such as to take him out of the scope of his employment.' [Cit.]" (Emphasis supplied.) *Hagin v. Powers*, 140 Ga. App. 300, 302 (1) (231 SE2d 780) (1976).

Evidence before the trial court demonstrated that Patterson "was at his employer's place of business and that he was generally engaged in doing the type of work for which he was hired." *Miller v. Honea*, 163 Ga. App. 421, 422 (294 SE2d 629) (1982). Furthermore, Patterson's initiation of the alleged attack was closely related to the manner and method in which he performed, or failed to perform, his duties. See *Miller v. Honea*, supra. In fulfilling his duties, Patterson was authorized to touch Palladino's genitals in order to adjust their position as necessary. Appellees presented evidence which would authorize a jury to find an uninterrupted escalation of contact between the patient "and an employee performing one of the duties for which he [was] employed. . . . [Cits.]" *Reynolds v. L & L Mgmt.*, 228 Ga. App. 611, 613 (1) (492 SE2d 347) (1997).

" 'The theory that one may be a servant one minute, and the very next minute step aside and act in his individual capacity, and then the next minute step back into his capacity as a servant is too refined a distinction. Since to exonerate the master from liability it is essential that the deviation should be for purposes entirely personal to the servant, where the servant, notwithstanding the deviation, is engaged in the master's business within the scope of his employment, it is immaterial that he join with this some private purposes of his own.' [Cit.]" [Cit.]

*McCranie v. Langdale Ford Co.*, 176 Ga. App. 281, 283 (335 SE2d 667) (1985). See also *Frazier v. Southern R. Co.*, supra at 594 (2); *Andrews v. Norvell*, supra at 245. More specifically, the theory that a servant may be touching another person's genitals in fulfilling his employment duties one minute, and the very next minute seek to arouse or satisfy his personal sexual desires by touching the genitals in an unauthorized manner and in that act not be a servant, is surely too refined a distinction. See *Frazier v. Southern R. Co.*, supra; *McCranie v. Langdale Ford Co.*, supra; *Andrews v. Norvell*, supra.

Review of the record and applicable case law compels the conclusion that a jury might properly find that Patterson's alleged assault was so closely connected with his checking and cleaning Palladino's groin area that it might fairly be regarded as within the prosecution and scope of employment. *Jump v. Anderson*, 58 Ga. App. 126, 129 (197 SE 644) (1938) (where the employee, while driving a truck on his employer's business, playfully turned the truck towards the plaintiff, and then did not turn back soon enough, so that a portion of the truck struck the plaintiff). The alleged inappropriate touching of genitals was not, as a matter of law, entirely disconnected, or a total departure, from that touching which was a permissible part of Patterson's duties to check and clean the area, and which he was accomplishing at the time of the alleged tortious act. *Andrews v. Norvell*, supra at 245 (where the employee of a saloon, while performing his duty to assist and direct customers in regard to seating, played a practical joke by having a customer sit where he had placed a substance which would burn a person's flesh). In its analysis of *Jump* and *Andrews* in footnote 18, the majority entirely omits the fact that the employees in those cases engaged in pranks for their own personal purposes at a time when they had just been serving their employers and even appeared to continue so serving.

The Court of Appeals correctly distinguished several of its previous opinions. *Palladino v. Piedmont Hosp.*, supra at 105 (1). In two cases, an employee accused of sexual misconduct was clearly not authorized to make contact with another person's sex organs. *Alpharetta First United Methodist Church v. Stewart*, 221 Ga. App. 748, 752 (2) (472 SE2d 532) (1996); *Doe v. Village of St. Joseph*, 202 Ga. App. 614, 616 (1) (415 SE2d 56) (1992). Another decision involved a physician's sexual assault, but the opinion does not contain any indication whatsoever that the doctor was authorized to make contact with the plaintiff's sex organs as part of the treatment. *Coley v. Evans Memorial Hosp.*, 192 Ga. App. 423 (385 SE2d 100) (1989). These three cases do not furnish any basis for a per se rule that a master is never liable for the sexual misconduct of his servant, just as there is no reason to exclude vicarious liability for willful torts, committed out of anger or malice. *Frazier v. Southern R. Co.*, supra at

594 (2). Indeed, there is a national trend away from any such per se rule. Note, 76 Minn. L. Rev. 1513, 1514 (1992).

As the majority itself indicates, *Mountain v. Southern Bell Tel. &c. Co.*, 205 Ga. App. 119, 120 (1) (421 SE2d 284) (1992), stands only for the proposition that vicarious liability cannot be based only on the fact that an employee was authorized to be present in a room with the plaintiff. In another case distinguished by the Court of Appeals and heavily relied on by the majority in this Court, where an employee gave an unauthorized injection of potassium chloride, there was no indication that she was authorized to give such injections to the plaintiff or to anyone else. *Lucas v. Hosp. Auth. of Dougherty County*, 193 Ga. App. 595 (1) (388 SE2d 871) (1989). "Here, Patterson was authorized to and even required to touch Palladino's genitals to perform his job. While performing the authorized task, he allegedly went further and sexually assaulted Palladino. [Cit.]" *Palladino v. Piedmont Hosp.*, supra at 105 (1).

Accordingly, there "was at least a jury question as to whether or not there was a deviation and, if so, whether the deviation was so slight as to not affect the master's responsibility for the servant's act. [Cit.]" *Reynolds v. L & L Mgmt.*, supra at 613 (1). See also *Bacon v. News-Press & Gazette Co.*, 188 Ga. App. 703, 704-705 (373 SE2d 797) (1988). The question of whether " 'the servant at the time of an injury to another was acting in the prosecution of his master's business and in the scope of his employment is for determination by the jury, except in plain and indisputable cases.' [Cit.]" *Bacon v. News-Press & Gazette Co.*, supra at 704. In my opinion, the Court of Appeals correctly reversed the trial court's grant of summary judgment in favor of Piedmont. Therefore, we either should affirm the judgment of the Court of Appeals or dismiss the writ of certiorari as improvidently granted.

I am authorized to state that Justice Hunstein and Justice Thompson join in this dissent.

DECIDED APRIL 29, 2003 —
RECONSIDERATION DENIED JUNE 2, 2003.

*Hall, Booth, Smith & Slover, Deborah S. Moses*, for appellant.
*Zimmerman & Associates, Barry L. Zimmerman, Keith F. Brandon, Downey & Cleveland, William C. Anderson*, for appellees.