Patricia RINIKER and Michael Riniker, Plaintiffs–Appellees/Cross–Appellants,

v.

John P. WILSON, Defendant–Appellant,

and

Wilson Bros.-Dubuque, Inc., Defendant/Cross–Appellee.

No. 99–1684.

Court of Appeals of Iowa.

Dec. 13, 2000.

Michael J. Coyle and Norman J. Wangberg of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellant.

John L. Riccolo and David L. Baker of Riccolo and Baker, P.C., Cedar Rapids, for appellee.

Heard by SACKETT, C.J., and HUITINK and MAHAN, JJ.

MAHAN, J.

Defendant, John P. Wilson, appeals from the district court judgment entered on a jury verdict in favor of plaintiffs on claims for assault, battery, intentional infliction of emotional distress, and loss of consortium. Wilson contends the district court (1) erred in failing to rule the claims were barred by the statute of limitations; (2) prejudicially erred in submitting an incomplete and unbalanced statute of limitations jury instruction; (3) erred by not instructing the jury on a defense of consent; (4) prejudicially erred in defining willful and wanton disregard in the jury instructions, effectively allowing an award of punitive damages based only on negligence; and (5) abused its discretion in failing to order a new trial on grounds of an excessive verdict. Plaintiffs cross-appeal from the district court's ruling dismissing their claims against defendant Wilson Bros.-Dubuque, Inc. We affirm.

**I. Background Facts and Proceedings.** Defendant John P. Wilson (Wilson) is general manager and salesman at Wilson Bros.-Dubuque, Inc. (Wilson Bros.), a business he and his father own. Plaintiffs Patricia Riniker and Michael Riniker are husband and wife. Wilson Bros. employed Michael Riniker from 1988 to 1996. Patricia and Michael, as "Jane and John Doe," filed a petition on November 6, 1996, alleging between June 1991 and November 1994, John P. Wilson sexually abused, harassed, assaulted, battered, and threatened to harm and/or kill Patricia. According to plaintiffs, John P. Wilson threatened to fire Michael and/or take away Patricia and Michael's youngest son if Patricia did not consent to the sexual demands made by Wilson. Plaintiffs contended the conduct of John P. Wilson was imputed to Wilson Bros., by virtue of Wilson's use of his position as vice president of Wilson Bros. and as Michael's employer to make his demands on Patricia. To support this contention further, plaintiffs also alleged incidents occurred on the premises of Wilson Bros., and in vehicles owned by Wilson Bros. The petition alleged five causes of action against John P. Wilson and Wilson Bros.: (1) negligence, (2) assault and battery, (3) intentional infliction of emotional distress and/or reckless disregard, (4) sexual abuse, and (5) loss of consortium. Defendants denied the allegations, and in an amendment to their answer, raised the affirmative defenses of statute of limitations and consent.

Trial began on May 18, 1999. At trial, Patricia testified Wilson sought out and raped her violently in June 1991 and continued to terrorize her for three and one-half years with threats and acts of violence. She testified Wilson assaulted her forty to fifty times between June 1991 and November 1994. She was still remembering bits and pieces of various incidents at the time of trial. The threats allegedly included threats against her life, threats to take away her youngest child, and threats to terminate Michael's employment. John Wilson testified he and Patricia engaged in sexual relations as consenting adults and denied using threats or force. According to Wilson, the affair ended prior to Labor Day 1994.

Patricia testified about two face-to-face meetings with Wilson in November 1994. According to Patricia, the last sexual encounter took place in early or mid-November. In late November, Patricia met with Wilson at Wilson Bros. and told him it was over. She stayed inside her car with the doors locked during the encounter, while Wilson remained outside the car. She claimed Wilson verbally threatened her

during this encounter, and continued to call her for a period of time afterwards.

In 1995, after consulting with an attorney, Patricia went to the police. The police attempted a sting operation. Patricia met Wilson and tried to elicit an incriminating statement from him. When Patricia confronted Wilson, he repeatedly stated he did not know what she was talking about. The police closed their investigation. Patricia met with five lawyers and several detectives before meeting with Dr. Sannito.

Dr. Sannito and Dr. Beckman examined Patricia in 1996. During his March 1996 examination, Dr. Sannito concluded Patricia was clinically depressed. In Dr. Sannito's opinion, she would not have entered into a consensual affair with Wilson. He did not observe a woman "scorned and out to get the guy that put her off." Given her status as a "psychological captive" of Wilson, Dr. Sannito stated he would expect Patricia to do things that outwardly looked like she was trying to please Wilson and not anger him. Dr. Beckman, after his May 1996 examination, diagnosed Patricia with depression and post traumatic stress syndrome. He gave her an article about "Stockholm Syndrome," a condition observed when people held hostage go along with the hostage-taker. According to Dr. Beckman, these individuals have a difficult time explaining to themselves why they would put up with the situation for so many years.

Michael Riniker testified between 1991 and 1994, he and Patricia gradually drifted apart, and their sex life diminished greatly. She became more and more withdrawn. Michael assumed Patricia's demeanor was due to something he did. Michael testified he was unhappy with his employment at Wilson Bros. as early as 1991. In 1990, he became service manager, but was demoted in 1992. John Wilson testified Wilson Bros. hired its competitor's service manager with twenty-three years experience in 1992, at a time when Michael had only two years experi-

ence. Michael's title changed from service manager to service adviser. Wilson denied Michael's pay decreased when the new service manager came. Wilson explained sometime after Wilson Bros. implemented a bonus system a mistake was made in the amount paid to Michael. He was overpaid and was required to pay part of the overpayment back.

Employees at Wilson Bros testified they observed Patricia at the dealership quite often. She would have her children with her, and would spend most of her time in Wilson's office. She called Wilson often, at work and on his car phone. According to the employees, Wilson eventually began trying to avoid Patricia when she came in or called. Witnesses testified Patricia was usually in a good mood and laughing when she was in Wilson's office.

The trial court sustained defendants' motion for directed verdict as to the corporation, Wilson Bros., but overruled the motion as to John P. Wilson. On May 25, 1999, the jury returned a special verdict, finding John P. Wilson assaulted, battered, and inflicted severe emotional distress upon Patricia Riniker on or after November 6, 1994. The jury awarded Patricia $300,000 for past and future mental pain and suffering, and $450,000 in punitive damages. It awarded Michael Riniker $100,000 for past and future loss of consortium. The trial court entered judgment on May 28, 1999. The trial court overruled defendant John P. Wilson's motions for judgment notwithstanding the verdict and a new trial. Defendant John P. Wilson appeals, and the Rinikers cross-appeal.

■ **II. "Jane and John Doe" Petition.** The last incident giving rise to plaintiffs' cause of action allegedly occurred in November 1994. Plaintiffs filed a "Jane and John Doe" petition on November 6, 1996. Plaintiffs disclosed their identity on or about December 23, 1996, by affidavits in response to defendants' interrogatories. Plaintiffs never filed a petition or amendment naming Rinikers as plain-

tiffs. The trial court granted defendants' "motion to substitute names of parties" on May 10, 1999, forcing plaintiffs to use their real names at trial.

Wilson argues Rinikers' petition did not toll the statute of limitations because the Rinikers never obtained a court order permitting them to proceed anonymously. Wilson contends one must obtain a court order in order to proceed by a "Doe" plaintiff petition.

Iowa law does not specifically provide for "Jane Doe" plaintiff petitions. Wilson concedes no rule or statute addresses the issue of filing anonymous petitions. However, Iowa courts have allowed, without comment, the use of "Jane Doe" pleadings. *Doe v. Cherwitz,* 518 N.W.2d 362 (Iowa 1994) (plaintiff alleged sexual assault by defendant); *Doe v. Johnston,* 476 N.W.2d 28 (Iowa 1991) (plaintiff alleged malpractice after contracting AIDS from blood transfusion during surgery); *Doe v. Iowa State Bd. of Physical Therapy and Occupational Therapy Exam'rs,* 320 N.W.2d 557 (Iowa 1982) (petitioner, licensed physical therapist, claimed she had a right to know the name of a person who complained about her to respondent); *Doe v. Ray,* 251 N.W.2d 496 (Iowa 1977) (patients at mental health institute brought class action to enjoin defendant from modifying a building at the institute for use as a minimum security correctional facility); *Doe v. Iowa R. Land Co.,* 54 Iowa 657, 7 N.W. 118 (1880) (action to recover land).

Rinikers argue the Iowa Supreme Court implicitly has approved "Doe" petitions by virtue of the Iowa "Doe" cases. We disagree. The cases make no mention of the procedure, if any, followed by plaintiffs in filing a "Doe" petition. It is impossible to determine from these cases whether the "Doe" party obtained prior approval from the district court to proceed anonymously. The issue was never raised in these cases, and we refuse to interpret the court's si-

lence as an implicit approval of such petitions.

Wilson urges this court to establish a rule requiring those filing "Doe" petitions to first obtain prior court approval. He cites *Doe v. Bodwin,* 119 Mich.App. 264, 326 N.W.2d 473 (1982), to support his contention a person seeking to proceed anonymously must seek the court's approval. In *Bodwin,* "Jane Doe" filed a petition against a psychologist, alleging he had sexual intercourse with her during therapy. The defendant moved to require plaintiff to identify herself. "Jane Doe" moved to suppress her name from public disclosure pursuant to a local court rule. The Michigan Court of Appeals reversed the trial court's refusal to grant plaintiff the right to proceed anonymously. The court discussed the need to balance one's right to privacy against "the customary and constitutionally embedded presumption of openness in judicial proceedings." *Bodwin,* 326 N.W.2d at 475 (citation omitted). It left the decision whether to permit the use of fictitious names to the discretion of the trial court, but found the trial court had not exercised its discretion in this case. *Id.* at 475–76. In reaching its decision, the court cited a local rule [1], which it concluded "tempered" a state statute mandating the title of an action include the names of all the parties. *Id.* at 476.

As one legal scholar explains:
> Like courts trying to decide whether to seal a record, federal and state courts that have squarely addressed the issue of plaintiff anonymity have not been able to come up with a precise rule as to when anonymity should be allowed. A few courts have taken the hard line approach that anonymity is never allowed, and held that no action can be commenced by the filing of a complaint in which the names of all plaintiffs are fictitious. The majority of courts, however, have entered into a delicate balanc-

---

1. Genesee County Circuit Court Rule 11.1 Orders of Suppression. Any party or his attorney may move the Judge in writing to sup- press the pleadings filed in any action that has been assigned to him, for good cause shown.

ing of the plaintiffs' privacy interests, the defendants' right to exoneration, and the public's right of access to trials and court records.

Adam A. Miliani, *Doe v. Roe: An Argument for Defendant Anonymity When a Pseudonymous Plaintiff Alleges a Stigmatizing Intentional Tort,* 41 Wayne L.Rev. 1659, 1677–78 (1995) (footnotes omitted).

We find persuasive Wilson's argument courts should be required to balance the relative interests of the parties and the public before granting a plaintiff permission to proceed anonymously. We decline, however, Wilson's invitation to retrospectively impose such a rule on these plaintiffs. We leave it up to the legislature and/or our supreme court to establish rules regarding the use of "Doe" plaintiff petitions in the courts of this state. *See State v. Rhomberg,* 516 N.W.2d 803, 805 (Iowa 1994) ("A proposed change in the law, if desired, is in the province of the legislature."); *Caylor v. Employers Mut. Cas. Co.,* 337 N.W.2d 890, 894 (Iowa App. 1983) ("As the law stands, however, no such provision has been made by the legislature, and it is not the province of the court to enact such a provision.").

Both parties urge the court to consider Iowa Rule of Civil Procedure 69 regarding amendments to the petition in conjunction with the court's order forcing the Rinikers to use their proper names at trial. Wilson contends replacing "Jane and John Doe" with the Rinikers' names was a change of party subject to Iowa Rule of Civil Procedure 69(e). Rule 69(e) simply does not apply under these circumstances, however, because Rinikers never attempted to amend the petition. Therefore, we will not address the merits of either party's argument in regard to rule 69(e).

■ We conclude no prejudice resulted from Rinikers' failure to amend and change party names before the eve of trial. Rinikers assert Wilson's counsel knew their identities when he accepted service on November 6, 1996, the day the petition was filed. Wilson could have determined the parties' identities from allegations found in the petition:

. . . .

5. Plaintiff John Doe has been an employee in the Service Department of Defendant Wilson Bros. since approximately August 1988.

6. Beginning in approximately June 1991, and continuing through November 1994, the Defendant John P. Wilson sexually abused, harassed, assaulted, battered, and threatened to harm and/or kill the Plaintiff, Jane Doe. Defendant John P. Wilson also threatened to fire Plaintiff Jane Doe's husband, John Doe, and/or take away Plaintiffs' youngest son if Plaintiff Jane Doe did not consent to the sexual demands made by Defendant John P. Wilson.

. . . .

These two allegations alone should have made Rinikers' identities obvious to Wilson. In addition, the record indicates Wilson knew the Rinikers' identities by December 23, 1996, approximately one month after Rinikers filed the petition.

Given the facts in this case, we cannot conclude Wilson was prejudiced by Rinikers' attempt to remain anonymous. No procedure exists for the filing of "Jane Doe" petitions in Iowa, and we defer to the legislature and/or our supreme court to make such rules. Even if we were to impose a requirement of prior court approval upon those seeking to proceed anonymously, we could not impose such a procedure upon these plaintiffs retroactively. We affirm the district court's denial of Wilson's motion for directed verdict on this issue.

■ **III. Jury Instructions.** We review objections to jury instructions on assigned error. Iowa R.App.P. 4; *Grefe & Sidney v. Watters,* 525 N.W.2d 821, 824 (Iowa 1994). The only grounds for objections we may consider on appeal are those specified in objections to the trial court. *Shepherd Components, Inc. v. Brice Petrides–Donohue & Assocs., Inc.,* 473

N.W.2d 612, 618 (Iowa 1991). To preserve error for our review, a party must specify the subject and grounds of the objection. Iowa R.Civ.P. 196; *Sievers v. Iowa Mut. Ins. Co.*, 581 N.W.2d 633, 638 (Iowa 1998). The objection must be sufficiently specific to alert the district court to the basis for the complaint so, if error does exist, the court may correct it before placing the case in the hands of the jury. *Grefe & Sidney*, 525 N.W.2d at 824. A party therefore may not amplify or change the grounds on appeal. *Sievers*, 581 N.W.2d at 638.

We read the court's instructions as a whole when determining whether there has been error. *Grefe & Sidney*, 525 N.W.2d at 824. We review to decide if the jury instructions are correct statements of the law and are supported by substantial evidence. *Id.; State v. Liggins*, 557 N.W.2d 263, 267 (Iowa 1996). As long as a requested instruction correctly states the law, has application to the case, and is not stated elsewhere in the instructions, the court must give the requested instruction. *Foggia v. Des Moines Bowl–O–Mat, Inc.*, 543 N.W.2d 889, 892 (Iowa 1996). If the trial court errs in submitting or refusing to submit an instruction, we will reverse only if the error has caused prejudice. *Kessler v. Wal–Mart Stores, Inc.*, 587 N.W.2d 804, 806 (Iowa App.1998).

**A. Statute of Limitations.** The district court ruled the alleged negligent acts of Wilson were ongoing and continuous, and therefore limited recovery to those actions accruing during the statutory period, two years, preceding the inception of the action for damages. *See Hegg v. Hawkeye Tri–County REC*, 512 N.W.2d 558, 559–60 (Iowa 1994). Therefore, Rinikers could not recover damages caused by alleged conduct more than two years before filing the petition on November 6, 1996. Instruction 17 provided:

> Defendant, for further defense, relies upon the Iowa Statute of Limitations. Under this law, Plaintiffs may only recover damages for acts of the Defendant committed within 2 years of the date of the filing by Plaintiffs of their Petition in this court.

> The Petition was filed on November 6, 1996. The burden of proof is upon the Defendant to prove the facts that make this defense applicable.

> Plaintiffs may not recover damages arising out of any acts of the Defendant which occurred before November 6, 1994.

Wilson argues the instruction is unbalanced and incomplete.

As a preliminary matter, we must address Rinikers' assertion Wilson failed to preserve error on this issue. For its objection to instruction 17, Wilson argued:

> MR. COYLE: Next, to Instruction 17. We believe our requested instruction dealing with the Statute of Limitations which is annotated is more complete and balanced, while the Court's intended instruction is bare bones. It should be fleshed out as we have proposed.

> THE COURT: Your instruction didn't place the burden of proof upon yourself. Did you know that Mr. Coyle?

> MR. COYLE: Oh, I might have known that. If you add that sentence to it, it would be perfect.

> THE COURT: Okay.

We conclude Wilson preserved error on this issue. Wilson's proposed instruction, combined with his argument to the court, provides a sufficient indication of his objection to the court's instruction.

Where the wrongful act is continuous or repeated, so separate and successive actions for damages arise, the statute of limitations runs as to these later actions at the date of their accrual. *Hegg*, 512 N.W.2d at 559. In a continuing tort, the burden of segregating damages arising before and after the commencement of the limitation period falls on the defendant. *Earl v. Clark*, 219 N.W.2d 487, 491 (Iowa 1974). The trial court correctly placed the burden of proving the statute of limitations

defense upon Wilson. *See also Saemisch v. Ley Motor Co.*, 387 N.W.2d 357, 359 (Iowa 1986) ("We believe that Ley, which interposed the time limitation defense, has the burden of proof on the issue."). We conclude the statute of limitations instruction was a correct statement of the law and did not cause prejudice to Wilson. Therefore, we affirm the trial court on this issue.

**B. Consent.** Wilson proposed the following instruction:

Defendants claim that Plaintiff consented to the sexual encounters. Consent is a complete defense. A person consents to otherwise offensive and potentially injurious bodily contact when the person voluntarily indicates, by words or conduct, her invitation of, agreement to or acceptance of such bodily contact.

The trial court ruled the words "or against her will," found in the court's battery instruction, incorporated the issue of consent. Wilson argues he was entitled to a separate instruction on consent. Rinikers contend Wilson failed to preserve error, thereby waiving the issue.

We find it questionable whether Wilson preserved error on this issue. Even if he did preserve error, however, we conclude the issue of consent was incorporated in the trial court's other instructions. The trial court instructed the jury in order to prove the claim of battery, Rinikers must prove "[t]he defendant had sexual relations with Patricia Riniker by force or against her will." Similarly, the trial court instructed the jury in order to prove the claim of assault, Rinikers must prove: (1) the defendant threatened to kill or injure Patricia Riniker; (2) the act was done with the intent to put Patricia Rinker in fear of physical pain or injury or in fear of physical contact which would be insulting or offensive; and (3) Patricia Riniker reasonably believed the act would be carried out immediately. These instructions required the jury to examine the issue of consent before reaching its conclusion. We affirm the district court on this issue.

**C. "Willful and Wanton Disregard."** Instruction 21 provided as follows:

Conduct is in willful and wanton disregard for the rights or safety of another when a person intentionally does an act of an unreasonable character in disregard of a known or obvious risk that is so great as to make it highly probable that harm will follow.

Wilson contends the trial court should have included "and which thus is usually accompanied by a conscious indifference to the consequences," at the end of its "willful and wanton disregard" instruction, citing *Vlotho v. Hardin County*, 509 N.W.2d 350, 356 (Iowa 1993). According to Wilson, the trial court's failure to include the language gave the jury permission to award punitive damages based on mere negligence. We disagree.

The trial court gave the jury three punitive damage instructions. The trial court instructed the jury it could award Patricia Riniker punitive damages if she had proven by a preponderance of clear, convincing, and satisfactory evidence Wilson's conduct constituted a willful and wanton disregard for her rights. It instructed the jury on the definition of "clear, convincing and satisfactory evidence." It instructed the jury an "intentional act" of "unreasonable character" was required to find "willful and wanton disregard for the rights or safety of another." The punitive damages instructions, read together, are correct statements of the law. Wilson can show no prejudice from the trial court's failure to include his proposed language in its instructions. We affirm the trial court on this issue.

**IV. Damages Award.** A motion for new trial is the proper method for challenging the adequacy of damages. Iowa R.Civ.P. 244(d); *Gorden v. Carey*, 603 N.W.2d 588, 589–90 (Iowa 1999). The court can grant a new trial, or impose conditions pursuant to rule 250. *Ort v. Klinger*, 496 N.W.2d 265, 269 (Iowa App. 1992). A new trial is not a matter of right. *Id.* In ruling on motions for new trial, the

trial court has broad, but not unlimited, discretion in determining whether the verdict effectuates substantial justice between the parties. Iowa R.App.P. 14(f)(3); *Gorden*, 603 N.W.2d at 590. We review the trial court's ruling on an abuse of discretion standard. *Foggia*, 543 N.W.2d at 891. We are slower to interfere with the grant of a new trial than with its denial. Iowa R.App.P. 14(f)(4); *Cowan v. Flannery*, 461 N.W.2d 155, 157 (Iowa 1990).

 The amount of damages awarded is peculiarly a jury, not a court, function. *Gorden*, 603 N.W.2d at 590. We do not set aside a verdict simply because we might have reached a different conclusion. *Ort*, 496 N.W.2d at 269. It is not for this court to invade the province of the jury. *Id.* The jury's verdict should not be set aside or altered unless the plaintiff proves the verdict: (1) is flagrantly excessive or inadequate; or (2) is so out of reason as to shock the conscience or sense of justice; or (3) raises a presumption it is the result of passion, prejudice or other ulterior motive; or (4) is lacking in evidential support. *Gorden*, 603 N.W.2d at 590.

 In passing on the alleged excessiveness of damages, we need to determine only whether there was substantial evidence to support the verdict. *Clarey v. K–Products, Inc.*, 514 N.W.2d 900, 903 (Iowa 1994). In considering whether the verdict is excessive, the evidence must be considered in the light most favorable to the plaintiff. *Ort*, 496 N.W.2d at 269.

 Wilson argues the trial court should have granted his motion for new trial, based on the excessive damage award. Given only two of the alleged forty to fifty incidents occurred within the two-year limitations period, Wilson contends the compensatory damages awards were so flagrantly excessive as to indicate passion or prejudice. He also points to several occurrences during trial, which he argues could have led to the jury's passion and prejudice in making the award.

The court limited an award of damages to events occurring on or after November 6, 1994. Patricia testified two events occurred on or after that date: (1) a sexual encounter, and (2) an encounter toward the end of November 1994, during which no physical contact occurred, but Wilson allegedly threatened Patricia. Patricia also testified as to phone calls and verbal threats during this time period, but was not specific as to when and what type of threats. Considering the evidence in the light most favorable to plaintiffs, we conclude substantial evidence supports the jury's verdict. Wilson had the burden of proving the segregation of damages. *See Earl*, 219 N.W.2d at 491. We will not reverse the jury's verdict based on the possibility he failed to meet his burden on this issue. We conclude the district court did not abuse its discretion in refusing to grant Wilson a new trial based on an excessive verdict.

## V. Cross–Appeal: Claims Against the Corporation.

 We review the trial court's directed verdict for errors at law. Iowa R.App.P. 4. Where no substantial evidence exists to support each element of a plaintiff's claim, the court may sustain a motion for directed verdict. *Godar v. Edwards*, 588 N.W.2d 701, 705 (Iowa 1999). Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion. *Hasselman v. Hasselman*, 596 N.W.2d 541, 545 (Iowa 1999). We view the evidence in the light most favorable to the party against whom the motion was directed. *Godar*, 588 N.W.2d at 705.

Rinikers contend they were entitled to submit claims against the corporation to the jury because defendant John P. Wilson, general manager and part owner of Wilson Bros., authorized and ratified his wrongful acts against plaintiffs. Plaintiffs argue: (1) John P. Wilson had the power to force Patricia to submit to his sexual attacks because of his supervisory position at Wilson Bros., (2) Wilson purported to speak on behalf of Wilson Bros. when he

threatened to fire and/or blackmail Michael, and (3) Patricia submitted to Wilson's wrongful acts because Wilson Bros. gave him the authority to follow through on his threats.

 Under the doctrine of respondeat superior, an employer is liable for the negligence of an employee committed while the employee is acting within the scope of his or her employment. *Godar,* 588 N.W.2d at 705; *Jones v. Blair,* 387 N.W.2d 349, 355 (Iowa 1986). "Scope of employment" refers to:

> [T]hose acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment.
>
> . . . .
>
> It has been said that in general the servant's conduct is within the scope of his employment if it is of the kind which he is employed to perform, occurs substantially within the authorized limits of time and space, and is actuated, at least in part, by a purpose to serve the master. . . .

*Vlotho,* 509 N.W.2d at 354 (quoting W. Page Keeton et al., *Prosser & Keeton on the Law of Torts,* § 70, at 502 (5th ed.1984)).

 "Within the scope of employment" requires the conduct be of the same general nature as that authorized or incidental to the conduct authorized. *Sandman v. Hagan,* 261 Iowa 560, 567, 154 N.W.2d 113, 117 (1967). An act is deemed to be within the scope of one's employment "where such act is necessary to accomplish the purpose of the employment and is intended for such purpose." *Id.* 261 Iowa at 566–67, 154 N.W.2d at 117. A deviation from the employer's business or interest to pursue the employee's own business or interest must be substantial in nature to relieve the employer from liability. *Godar,* 588 N.W.2d at 706.

 Restatement (Second) of Agency lists the following factors to be considered in determining whether conduct of an employee may be characterized as occurring within the scope of the employee's employment:

(a) whether or not the act is one commonly done by such servants;

(b) the time, place and purpose of the act;

(c) the previous relations between the master and the servant;

(d) the extent to which the business of the master is apportioned between different servants;

(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

(f) whether or not the master has reason to expect that such an act will be done;

(g) the similarity in quality of the act done to the act authorized;

(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

(i) the extent of departure from the normal method of accomplishing an authorized result; and

(j) whether or not the act is seriously criminal.

Restatement (Second) of Agency § 229(2) (1957). The ultimate question is whether or not it is just that the loss resulting from the servant's acts should be considered as one of the normal risks to be borne by the business in which the servant is employed. *Godar,* 588 N.W.2d at 706 (quoting Restatement (Second) of Agency § 229 cmt. a (1957)).

 The question of whether an act is within the scope of employment is ordinarily a jury question. *Sandman,* 261 Iowa at 569, 154 N.W.2d at 118. However, the question as to whether the act which departs markedly from the employer's business is still within the scope of employ-

ment may well be for the court depending on the surrounding facts and circumstances. *Id.*

 The alleged sexual abuse by Wilson was not an act committed within the scope of his employment for which the corporation may be held liable. Wilson's acts were a substantial deviation from his duties at Wilson Bros. and were not "necessary to accomplish the purpose of employment." While Wilson became acquainted with Patricia by virtue of his position at Wilson Bros., we cannot conclude his actions were committed in furtherance of his duties or the objectives of the corporation. The fact some of the alleged conduct occurred on Wilson Bros.' property does not make it automatically liable for Wilson's actions. *See Godar*, 588 N.W.2d at 707.

Wilson's alleged conduct was so far removed from his duties with Wilson Bros. that the question as to whether his actions departed markedly from Wilson Bros.' business was properly determined by the district court. We affirm the court's dismissal of claims against the corporation.

**AFFIRMED.**