# IN THE COURT OF APPEALS OF IOWA

No. 13-2041
Filed January 14, 2015

**SONNI M. GIUDICESSI,**
    Plaintiff-Appellee,

**vs.**

**STATE OF IOWA,**
    Defendant-Appellant,

**and**

SERGIO PARADISO, M.D., PH.D.,
    Defendant.
_____

Appeal from the Iowa District Court for Johnson County, Douglas S. Russell, Judge.

The State appeals the court's denial of its motion for summary judgment finding material issues exist concerning the liability of a state hospital under the doctrine of respondeat superior for the relationship between a doctor and his former patient. **REVERSED AND REMANDED.**

Thomas J. Miller, Attorney General, and Anne Updegraff, Assistant Attorney General, for appellant.

Michael J. Carroll of Coppola, McConville, Coppola, Carroll, Hockenberg & Scalise, P.C., West Des Moines, and Kodi A. Brotherson of Becker & Brotherson Law Firm, Sac City, and David H. Goldman of Babich Goldman, P.C., Des Moines, for appellee.

Sergio Paradiso, Coralville, defendant pro se.

Heard by Mullins, P.J., and Bower and McDonald, JJ.

**BOWER, J.**

The State of Iowa appeals the court's denial of its motion for summary judgment finding material issues exist concerning the liability of the State, under the doctrine of respondeat superior, for the sexual relationship between University of Iowa psychiatrist Dr. Sergio Paradiso and his former patient Sonni Giudicessi. Limiting our inquiry on the intent of Paradiso, we find Paradiso's acts were "so far removed" from the scope of his employment the State cannot be held liable. We find the district court erred in finding the existence of a general issue of material fact. We reverse and remand.

## I.    BACKGROUND FACTS AND PROCEEDINGS

Sonni Giudicessi was a patient at the University of Iowa Hospitals and Clinics (UIHC) Eating Disorder Program on three occasions from 2008 through 2009. She received inpatient and out-patient treatment for anorexia nervosa-restricting type, alcohol abuse, and depression. Dr. Paradiso was a psychiatrist employed by the State of Iowa at UIHC, and was one of several psychiatrists who provided care to Giudicessi during two of her stays at UIHC. Paradiso conducted one-on-one counseling sessions with Giudicessi where she disclosed personal details about her past, including her alcohol abuse and sexual relationships. Paradiso's last session with Giudicessi occurred on December 7, 2009.

Giudicessi was discharged from the program in early December 2009. In February 2010, Giudicessi contacted Paradiso through an internet social network. Paradiso responded by sending Giudicessi an email, through his

private email account, congratulating her on her new job and inquiring about her current residence. The two corresponded further, and eventually met in person on March 3, 2010, when Giudicessi told Paradiso to stop at a bar for an event she planned on attending. Paradiso complied and met her at the bar, and spent most of the evening with her. Paradiso arranged the next meeting for March 10 to take place in Grinnell. At that meeting, Paradiso told Giudicessi details about his personal life, including information about his son who was recently diagnosed with multiple sclerosis. At the end of the meeting, Paradiso stated he did not think meeting again was a good idea. He later told Giudicessi they could be friends and talk over the telephone and by email. Paradiso emphasized to Giudicessi they could not be seen together in public or tell anyone about their relationship, including her new psychiatrist in Des Moines.

The two began talking over the telephone every day. Paradiso mentioned moving to Italy where they could live together. The two met in Iowa City on March 19 at Paradiso's house. As they drank a bottle of wine, Paradiso again mentioned he could not do "this," and he talked about leaving the country. Paradiso and Giudicessi slept together, but did not have sex. The next day, Paradiso attempted to have sex with Giudicessi. Giudicessi refused his advances. Paradiso went on to share personal details concerning the end of his relationship with a former girlfriend and the fact he missed having sex. The two continued to talk and arranged another meeting in Grinnell on March 29.

A sexual relationship began on March 29, 2010, and ended in June.[1] UIHC was not aware of the relationship and only learned about the relationship after Giudicessi's Des Moines-based psychiatrist, who was not associated with UIHC, reported the relationship to UIHC in July.

Paradiso worked in the psychiatry department at UIHC as a staff doctor from 1997 through his departure in July 2010. UIHC psychiatry resident doctors are trained it is inappropriate to have sexual relationships with their patients. Dr. Winokur, the department head of psychiatry, distributes a list of commandments to all residents and fellows in the department. The first commandment is: "Thou shalt not sleep with any UI Psychiatry Hospital patient unless it be thy spouse." The American Psychiatric Association Code of Ethics prohibits relations between current and former patients. UIHC and University of Iowa policies prohibit sexual harassment.

During their three-month relationship, Paradiso mentioned to Giudicessi on multiple occasions he could get in trouble for seeing her outside the clinical setting. He emphasized the need to keep the relationship a secret. Giudicessi was also aware the relationship was improper. During the affair, Giudicessi continued to refer to Paradiso as "Doctor," and continued to regard Paradiso as her treating psychiatrist. However, the doctor/patient relationship was not shared by Paradiso. The relations were conducted off University property, usually at Paradiso's residence or in hotels. In mid-June Paradiso sent Giudicessi an email

---

[1] For the purposes of this appeal, we find it unnecessary to delve into the details of the multiple sexual encounters between Paradiso and Giudicessi.

ending the relationship. Giudicessi responded, they have not communicated since.

On July 22, 2011, Giudicessi filed an anonymous petition at law and jury demand against the State of Iowa, UIHC, and Paradiso. The claims against the State and UIHC included: medical negligence under a respondeat superior theory; negligent hiring, supervision, and retention of Dr. Paradiso; and breach of contract. On October 28, the court entered an order requiring Giudicessi to file an amended petition including her name and dismissing the UIHC. She complied and filed an amended petition. The State filed an answer to the amended petition, affirmative defenses, and jury demand on December 12, 2011. The State filed a motion for summary judgment on April 23, 2013. The court found issues of material fact in existence and denied the State's motion. The State filed a motion to enlarge and amend the summary judgment ruling, which the court also denied. The State then filed an interlocutory appeal with our supreme court. The interlocutory appeal was granted and assigned to this court.

On appeal, the State claims: there are no genuine issues of material fact concerning the State's liability under the theory of respondeat superior, the court erred in considering Giudicessi's belief of continued treatment by Paradiso after her discharge a fact issue, the court erred in considering the theory of transference a fact issue, and the court erred in considering the foreseeability of a psychiatrist-patient sexual relationship a fact issue.

## II.    STANDARD OF REVIEW

We review rulings on motions for summary judgment for the correction of errors at law. *City of Cedar Rapids v. James Props., Inc.*, 701 N.W.2d 673, 675 (Iowa 2005). "Summary judgment is appropriate only when the entire record demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007). We examine the record in the light most favorable to the nonmoving party and draw all legitimate inferences the evidence bears in order to establish the existence of questions of fact. *Mason v. Vision Iowa Bd.*, 700 N.W.2d 349, 353 (Iowa 2005). "A party resisting a motion for summary judgment cannot rely on the mere assertions in [her] pleadings but must come forward with evidence to demonstrate that a genuine issue of fact is presented." *Stevens*, 728 N.W.2d at 827.

## III.    ANALYSIS

### A.    Respondeat Superior

Giudicessi claims issues of material fact exist concerning whether or not the State is liable, under the doctrine of respondeat superior, for its psychiatrist-employee's sexual relationship with a former patient.[2]  The State responds the trial court erred in finding issues of fact existed on the State's liability for

---

[2] Giudicessi also asserts we should impose a standard of strict liability due to the special relationship between psychiatrists and their patients. Giudicessi raised this issue for the first time on appeal; therefore error has not been preserved. *See Duck Creek Tire Serv., Inc. v. Goodyear Corners, L.C.*, 796 N.W.2d 886, 892 (Iowa 2011) (noting a party ordinarily must raise an issue and the district court must rule on that issue to ensure preservation for appellate review).

Paradiso's relations with Giudicessi, because the relations occurred outside the scope of his employment with the hospital.

Our supreme court provided an extensive discussion of the doctrine of respondeat superior:

> The well-established rule is that under the doctrine of respondeat superior, an employer is liable for the negligence of an employee committed while the employee is acting within the scope of his or her employment. *Jones v. Blair*, 387 N.W.2d 349, 355 (Iowa 1986); *Sandman v. Hagan*, 154 N.W.2d 113, 117 (Iowa 1967). Thus, "[a] claim of vicarious liability under the doctrine of respondeat superior rests on two elements: proof of an employer/employee relationship, and proof that the injury occurred within the scope of that employment." *Biddle v. Sartori Mem'l Hosp.*, 518 N.W.2d 795, 797 (Iowa 1994); *see also Vlotho v. Hardin County*, 509 N.W.2d 350, 354 (Iowa 1993).
>
> We have said that for an act to be within the scope of employment the conduct complained of "must be of the same general nature as that authorized or incidental to the conduct authorized." *Sandman*, 154 N.W.2d at 117. Thus, an act is deemed to be within the scope of one's employment "where such act is necessary to accomplish the purpose of the employment and is intended for such purpose." *Id.* The question, therefore, is whether the employee's conduct "is so unlike that authorized that it is 'substantially different.'" *Id.* Said another way, "a deviation from the employer's business or interest to pursue the employee's own business or interest must be *substantial in nature* to relieve the employer from liability." *Id.* at 118.
>
> Section 229(2) of the Restatement (Second) of Agency (1957) lists the following factors to be considered in determining whether conduct of an employee may be characterized as occurring within the scope of the employee's employment:
> > (a) whether or not the act is one commonly done by such servants;
> > (b) the time, place and purpose of the act;
> > (c) the previous relations between the master and the servant;
> > (d) the extent to which the business of the master is apportioned between different servants;
> > (e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

> (f) whether or not the master has reason to expect that such an act will be done;
> (g) the similarity in quality of the act done to the act authorized;
> (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;
> (i) the extent of departure from the normal method of accomplishing an authorized result; and
> (j) whether or not the act is seriously criminal.
>
> Comment a, concerning subsection (2), explains that the ultimate question in determining whether an employee's conduct falls within the scope of employment is whether or not it is just that the loss resulting from the servant's acts should be considered as one of the normal risks to be borne by the business in which the servant is employed.
>
> Restatement (Second) of Agency § 229 cmt. a.
>
> "Although the question of whether an act is within the scope of employment is ordinarily a jury question, depending on the surrounding facts and circumstances, the question as to whether the act which departs markedly from the employer's business is still within the scope of employment may well be for the court." *Sandman,* 154 N.W.2d at 118 (deciding that question whether employee was acting within scope of employment was properly a question for the court, not jury); *cf. Mary KK v. Jack LL*, 203 A.D.2d 840 (N.Y. App. Div. 1994) (noting that "scope of employment" is usually a jury question, but summary judgment is appropriate where there is no conflicting evidence or the facts are undisputed).

*Godar v. Edwards*, 588 N.W.2d 701, 705–06 (Iowa 1999).

In *Godar*, heard on appeal from a directed verdict motion, our supreme court found a curriculum counselor acted outside the scope of his employment when he allegedly abused a special needs student. *Id.* at 706. The court reasoned the abuse was not "of the same general nature" as authorized by the school in connection with his role as curriculum counselor. *Id.* at 706–07. The court also noted even though the abuse occurred on school property, the school was not automatically liable for the abuse. *Id.* The court found no evidence to

support the fact the alleged abuse was "expected, foreseeable, or sanctioned by the school district." *Id.* at 707. "We do not believe that sexual abuse by a teacher is a 'normal' risk associated with the objectives of educating students such that it should be a risk that should be borne by the school district." *Id.*

Similarly, in *Riniker v. Wilson*, an employee claimed respondeat superior liability against an employer for the abuse of the employee's wife where the employee's job security was used as blackmail. 623 N.W.2d 220, 232 (Iowa Ct. App. 2000). We held alleged sexual abuse by one employee of another employee's wife was not committed in the scope of his employment, because the alleged acts were a "substantial deviation from his duties . . . and were not necessary to accomplish the purpose of employment." *Riniker*, 623 N.W.2d at 232. Echoing *Godar*, we also reasoned that just because the acts occurred on company property, the company was not automatically liable for the acts. *Id.* We concluded the acts were so far removed from the employee's job duties the company could not be held liable. *Id.*

In *Weems v. Federated Mutual Insurance Company*, the Northern District of Iowa, while ruling on a motion for summary judgment, found the assault of an employee by a supervisor generated a genuine issue of material fact. 220 F. Supp. 2d 979, 994 (N.D. Iowa 2002). The assault occurred when the employee confronted a supervisor about a hostile work environment claim. *Id.* at 992. The employee's act of recording the conversation angered the supervisor, and the supervisor attempted to forcibly remove the recording device from the employee. *Id.* at 992–93. The court found the supervisor's act could fall within the scope of

his employment, due to the fact the role of supervisor could "encompass potentially heated interactions" with his subordinates. *Id.* at 993.

Although Iowa jurisprudence has addressed respondeat superior in multiple circumstances, our case law has yet to address the applicability of this doctrine on the unique relationship between a mental health professional and a former patient.

In *Block v. Gomez*, the Wisconsin Court of Appeals evaluated a respondeat superior claim in the context of a sexual relationship between a counselor and a patient. 549 N.W.2d 783, 785 (Wis. Ct. App. 1996). The sexual relationship began two months into the counseling relationship. *Id.* The relationship occurred both in and out of the clinical setting; eventually the patient moved in with the counselor. *Id.* Ultimately, the counseling and sexual relationship ended. *Id.*

The patient filed suit against the counselor and the clinic alleging the counselor was acting within the scope of his employment and therefore the clinic was liable under respondeat superior. *Id.* The patient presented expert testimony demonstrating, pursuant to transference phenomenon, it was impossible to separate the sexual and the therapeutic relationship. *Id.* at 785–86. The counselor testified he had received training on transference. *Id.* at 785. The counselor's supervisor testified the clinic's employee manual forbade sexual relationships with patients, and it was against ethical guidelines. *Id.* The court found the counselor was acting for his own personal interest, and not the interest of or service to the clinic, when he initiated the sexual relationship with the

patient. *Id.* at 788. "We reject [the patient's] contention that the 'transference phenomenon' makes [the counselor's] sexual relationship with [the patient] inseparable from his therapeutic relationship with [the patient] for purposes of the Clinic's vicarious liability. 'Therapist-patient sex arises not out of the transference, which is essential to the therapy, but the intentional abuse of the transference.'" *Id.* (citation omitted). The court reasoned the therapist's intent "must be considered when determining whether the conduct was in the scope of the employment." *Id.* Though, "if the employee fully steps aside from conducting the employer's business to procure a predominantly personal benefit, the conduct falls outside the scope of employment." *Id.*

Here, the sexual relationship between Paradiso and Giudicessi began four months after her discharge from any treatment by the UIHC. Paradiso knew the relationship was wrong, as did Giudicessi. Paradiso also knew his actions were far outside the scope of his employment duties with UIHC. He actively tried to keep the relationship a secret, as did Giudicessi. There is no evidence in the record showing Paradiso represented to Giudicessi the sexual relationship was a continuation of their prior counseling relationship. Paradiso pursued the relationship for his own personal interest and not the interests of UIHC. While it is possible Giudicessi thought the sexual relationship was a continuation of the counseling relationship, our inquiry focuses on the intent of the employee, Paradiso, and whether or not he was acting within the scope of his employment. *Godar*, 588 N.W.2d at 705–06. Paradiso's acts were "so far removed" from his employment duties the State could not be held liable. *Riniker*, 623 N.W.2d at

232; *see also Sandman v. Hagan*, 154 N.W.2d 113, 118 (Iowa 1967) ("[T]he question as to whether the [employee's] act which departs markedly from the employer's business is still within the scope of employment may well be for the court."). The record shows Paradiso knew the relationship was inappropriate, but continued to pursue the relationship for his own gratification. His acts deviated from the scope of his employment with the UIHC. We find the court erred in finding a genuine issue of material fact existed regarding the State's liability for Paradiso's relationship with Giudicessi. [3]

### B.    Other Issues of Material Fact

Since we have limited our inquiry only to the intent of the employee and the scope of his employment, for the reasons stated above, we find no issues of material fact exist concerning Giudicessi's belief of continued treatment by

---

[3] Other courts have reached similar results. *See, e.g., Bodin v. Vagshenian*, 462 F.3d 481 (5th Cir. 2006) (declining to extend respondeat superior liability to hospital for sexual abuse of patients by psychiatrist); *Newyear v. Church Ins. Co.*, 155 F.3d 1041 (8th Cir. 1998) (applying respondeat superior and finding alleged acts of sexual misconduct between priest and parishioner, committed during pastoral counseling, not within the scope of pastor's employment); *Andrews v. United States,* 732 F.2d 366 (4th Cir. 1984) (finding employer clinic not liable for counselor who acted solely in his own interest when he convinced a patient to have sex with him as part of her therapy); *Piedmont Hosp., Inc. v. Palladino*, 580 S.E.2d 215 (Ga. 2003) (holding hospital not liable to patient under respondeat superior for hospital employee's alleged misconduct in manipulating patient's genitals during patient's stay at hospital); *P.S. v. Psychiatric Coverage, Ltd.*, 887 S.W.2d 622 (Mo. Ct. App. 1994) (holding employer not liable under respondeat superior for damages resulting from an employee psychiatrist's involvement in a sexual relationship with a patient); *Buck v. Blum*, 130 S.W.3d 285 (Tex. App. 2004) (holding hospital not liable under respondeat superior for neurologist's sexual abuse of a patient); *Birkner v. Salt Lake Cnty.*, 771 P.2d 1053 (Utah 1989) (stating therapist's sexual conduct with patient "arose from his own personal impulses, and not from an intention to further his employer's goals"); *Thompson v. Everett Clinic*, 860 P.2d 1054 (Wash Ct. App. 1993) (finding employer hospital not liable under respondeat superior for doctor who sexually abused patient because the doctor was acting on personal motives).

Paradiso after her discharge or the transference theory, or the foreseeability of a psychiatrist and patient sexual relationship.

## IV.     CONCLUSION

The district court erred in denying the State's motion for summary judgment and finding the existence of material issues of fact.

**REVERSED AND REMANDED.**