**IN THE COURT OF APPEALS OF IOWA**

No. 15-1062
Filed May 25, 2016

**KYLE EDWARD LACKMAN,**
        Plaintiff-Appellee,

**vs.**

**ALEXANDRA NOEL LIEDMAN,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

The defendant in a tort suit appeals the denial of her motion for remittitur, alleging the jury's award for lost wages was excessive. **MODIFIED AND AFFIRMED ON CONDITION, AND REMANDED.**

Michael D. Jones of Patterson Law Firm, L.L.P., Des Moines, for appellant.

Stuart L. Higgins of Higgins Law Firm, P.L.L.C., West Des Moines, and Marc A. Humphrey of Humphrey Law Firm, P.C., Des Moines, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

The defendant in a tort action challenges the district court's denial of her motion for remittitur. Because the jury's damage award for the plaintiff's lost wages was not supported by the evidence, we find the district court abused its discretion in not reducing the verdict.

## I. Background Facts and Proceedings

Alexandra Liedman was driving her Hyundai Sonata north on Fleur Drive in Des Moines on December 19, 2011, when she rear ended Kyle Lackman's Dodge Ram van that was stopped at a red light. Lackman suffered personal injuries and required medical treatment. In June 2013, he filed a petition seeking damages. Liedman admitted fault. Following an April 2015 trial, the jury awarded Lackman a total of $46,621 in damages, categorized as follows:

| | |
|---|---|
| 1. Past medical expenses | $2821 |
| 2. Lost wages | $24,800 |
| 3. Past pain and suffering | $14,000 |
| 4. Future Pain and Suffering | $0 |
| 5. Past loss of mind and body | $5000 |
| 6. Future loss of mind and body | $0 |
| TOTAL (add the separate items of damage) | $46,621 |

The amount recovered in lost wages is the sole focus of this appeal.

At the time of the car accident, Lackman was running his own business, All About Floors L.L.C. Due to his injuries, Lackman did not work from the date of the accident until April 2012 when he joined Lockwood Floors. Lockwood terminated Lackman's employment in August 2012 following his involuntary hospitalization for depression and anxiety. Lackman asserted his mental health difficulties stemmed from the injuries he suffered in the collision. Lackman secured employment with Barnum Floors in April 2013.

Both before and during the trial, Lackman sought damages for the wages he lost between December 2011 and April 2012. In response to interrogatories regarding the amount of lost wages, Lackman answered "earnings would tend to vary from week to week, but on average, he would net approximately $40,000 per year (approximately $770 per week) . . . . A reasonable estimate for his lost earnings would therefore be: $10,000." In a pretrial motion in limine, Lackman asked the district court to exclude any reference to a civil rights lawsuit he filed as a result of his termination from Lockwood Floors. In support of that request, Lackman admitted his loss-of-wage claim encompassed only the four months of unemployment following the accident. Lackman's motion included the following bolded language: "Plaintiff is limiting his loss wage claim from the date of the crash, December 19, 2011 to the date he commenced employment with Lockwood in April of 2012, No additional loss wages are being claimed."

At trial, Lackman's accountant testified regarding the annual profits generated by All About Floors, and Lackman offered his tax returns from 2010 and 2011. During closing arguments, Lockwood's attorney told the jury:

> I think it's not in dispute that his business . . . in 2010 and 2011 was generating about a 40 to $45,000 profit a year. . . . So that's kind of the measuring stick of what his lost earnings would be. And if you calculate it out from December 19 until he went to work for Lockwood in April of 2012, that amounts to 10 to $12,000. [Y]ou could discount a little bit for the Christmas holiday, because most people kind of slow down a little bit during the holidays and don't work so hard, but that's not in dispute either.

Lockwood's attorney further argued: "I don't think it's in dispute that Kyle worked sporadically at best from the time of the collision until he went to work at Lockwood. And we have limited his wage-loss claim to that period of time."

Despite the self-imposed limitation on Lockwood's request, the jury's verdict included a lost-wages line item of $24,800 rather than $10,000. Following the verdict, Liedman filed a motion for remittitur. Liedman asked the court to reduce the lost-wages award from $24,800 to $10,000—the amount established at trial for the timeframe in question. Liedman claimed the jury's award considered "wages that would have been earned at Lockwood after Kyle Lackman was terminated by Lockwood. Mr. Lackman's currently pending lawsuit against Lockwood claims, among other things, lost wages. Without the requested remittitur, Plaintiff will recover twice for the same lost wages." Liedman's motion emphasized she was not seeking a new trial.

Lackman resisted the motion for remittitur, noting the jury heard evidence that his termination from Lockwood was a result of an involuntary hospitalization stemming from the car accident. He argued:

> From the evidence presented, a reasonable jury could conclude that Lackman had lost wages from December 19, 2011 until April, 2012. A reasonable jury could have also concluded that but for the automobile accident, Lackman would not have been fired from Lockwood Floors. Thus, Lackman had additional lost wages from August 2012 until he was re-hired by Barnum Floors in April 2013.

Liedman responded that Lackman had not asked the jury to award lost wages for that additional time period. Following a hearing, the district court denied the remittitur. The court found

> The jury was not made aware of plaintiff's concession that he was only claiming $10,000 in lost wages nor was the jury made aware that plaintiff had instituted other legal proceedings against another entity, not a party hereto, which potentially could result in an award of lost earnings which could duplicate a portion of his recovery for lost earnings herein.

The court acknowledged the jury "arguably overcompensated plaintiff for his loss of earnings considering what plaintiff admitted he was seeking in the way of compensation for said item of damages." But the court ultimately determined the jury followed its instructions:

> The jury herein was instructed that the proper measure of damages for lost earnings was the reasonable value of lost wages from the date of injury to the present time. Instruction No. 13. The jury was further instructed that the amount assessed for any item of damage must not exceed the amount caused by the defendant as proved by the evidence. *Id.* The court does not know exactly how the jury arrived at the amount of its award for lost wages. However, it cannot say the jury did not follow the instructions.

Liedman now appeals.

## II.    Standard of Review

"We review remittitur rulings for an abuse of discretion." *Triplett v. McCourt Mfg. Corp.*, 742 N.W.2d 600, 602 (Iowa Ct. App. 2007). The district court has broad, but not unlimited, discretion in deciding whether the verdict achieves substantial justice between the parties. *Riniker v. Wilson*, 623 N.W.2d 220, 230 (Iowa Ct. App. 2000). We will find an abuse of discretion only when the decision is clearly untenable or to an extent clearly unreasonable. *Triplett*, 742 N.W.2d at 602.

## III.    Analysis

A jury's assessment of damages may be considered excessive if it is "beyond the fair province of the jury to award upon the evidence before it." *WSH Properties, L.L.C. v. Daniels*, 761 N.W.2d 45, 50 (Iowa 2008) (quoting *Jurgens v. Davenport, Rock Island & N. Ry.*, 88 N.W.2d 797, 805 (Iowa 1958); *see also* 58 Am. Jur. 2d *New Trial* § 456, at 413-14 ("Remittitur may be proper when a jury,

although not acting under the type of passion or prejudice that would warrant a new trial, nonetheless awards an amount that is unreasonable given the evidence.")). A remittitur to reduce a jury's damage award is appropriate when the award was not justified by the evidence before it or the wrong measure of damages was applied. *WSH Properties*, 761 N.W.2d at 52.

On appeal, Liedman claims the evidence did not support the jury's award of $24,800 in lost wages for the time frame established by Lackman's request. He argues we have inherent authority to order remittitur because the wrong measure of damages was applied. *Id.* at 47.

Lackman counters that $24,800 in lost-wage damages was a reasonable verdict even though he only asked for $10,000. Lackman acknowledges his attorney's closing argument limited his request for lost wages to the four months from the accident until April 2012. But he nevertheless contends the jury acted reasonably in awarding him lost wages for a longer period because his firing from Lockwood in August 2012 resulted from his involuntary hospitalization that related to the injuries he suffered during the car accident. Thus, the record presented to the jury "justified a determination that Lackman's lost wage claim should include the time from the collision up until he initially went to work for Lockwood; and then include the time after he was terminated from Lockwood until he returned to work for Barnum."

We find Liedman's position to be more persuasive. The purpose of loss-of-wage recovery is to compensate plaintiffs for the reasonable value of the time they are displaced from their occupation. *Hopping v. Coll. Block Partners*, 599 N.W.2d 703, 706 (Iowa 1999). At the time of the accident, Lackman was earning

approximately $40,000 a year. Proof that he missed work for four months entitled him to a lost-wage verdict of $10,000 not $24,800.

While the jury might have factored in Lackman's unemployment following his termination from Lockwood, Lackman expressly disavowed seeking any damages for that period of time. In his own motion in limine, Lackman agreed to limit the scope of his lost wages claim to avoid discussion of his employment lawsuit against Lockwood. Lackman strategically made his bed, now he must lie in it. *See Chown v. Lennox Furnace Co.*, 147 N.W. 144, 147 (Iowa 1914) ("Formal admissions of counsel, during the trial of a case, and so intended, are binding.").

The district court was mistaken in finding the jury was not made aware of Lackman's concession that he was only claiming $10,000 in lost wages. Lackman's attorney explained the limitation to the jury in closing arguments. Because Lackman rightly communicated his concession to the jury, its verdict on lost-wages lacked evidentiary support and the district court abused its discretion in not granting the remittitur.

Accordingly, we exercise our inherent authority to order a remittitur. *See Miller v. Young,* 168 N.W.2d 45, 53 (Iowa 1969). "When a remittitur of damages is granted, only the excess of the award is remitted. Generally, this standard means the award should be reduced 'to the maximum amount proved' under the record." *Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 777 (Iowa 2009) (citations omitted). We conclude Lackman's damage award for lost wages should be reduced to $10,000, shrinking his total award to $31,821. If Lackman files consent in the district court to remit lost-wage damages in excess of $10,000

within thirty days from issuance of procedendo in this case, the judgment as modified to $31,812 shall stand. *See* Iowa R. Civ. P. 1.1010. If the consent to remit is not so filed, a new trial as to lost-wage damages only is hereby ordered.

**MODIFIED AND AFFIRMED ON CONDITION, AND REMANDED.**